We concur in the opinion of the General Term that the liability of the defendant, as presented to the jury in the charge, was erroneously made to depend upon the question whether the bridge obstructed or hindered the enjoyment of the highway by the public, independently of the further question whether the company in the exercise of the right to construct its road across the highway had, in compliance with the requirements of its charter (Laws of 1846, chap. 195, § 5), restored "the highway, as near as may be, to its former state so as not unnecessarily to impair its usefulness." The court charged that if the bridge obstructed or hindered the enjoyment of the public in the highway, it was a nuisance, and the defendant was guilty under the indictment, and further that the question to be passed upon by the jury, was whether the bridge is so constructed "as not to impair the usefulness of the road, and to interfere with the enjoyment or safety of the public in their right to travel upon the road." The exception to the charge, although somewhat informal and inexact, fairly construed, raises, we think, the point whether the charge was correct in the particular mentioned. The highway, when the defendant's road was constructed, and until 1868, was owned *Page 269 
by a turnpike company. The turnpike company was chartered by special act of the legislature, passed April 7, 1800, "for improving the road from Eastchester to Byram," which before the charter seems to have been an existing highway, and the charter contained a provision that where a bridge or bridges are necessary, such bridge or bridges shall not be less than twenty feet wide. This doubtless primarily referred to bridges over streams, railroads not being in use at that early period, but the provision seems to indicate that in the opinion of the legislature, it might not be necessary that bridges should be as wide as other parts of the highway. The defendant constructed its road across the highway in question about twenty feet below the surface, and thus rendered the building of a bridge necessary. The first bridge was built prior to 1850, and was about sixteen feet wide. This was replaced by a new bridge built in 1852 or 1853 about nineteen and one-half feet wide, and the second bridge was used for about twenty-six years until 1879, when it was in turn replaced by the present bridge which is twenty-four feet wide, with a roadway of twenty-two and one-half feet in width, which corresponds substantially with the width of the beaten track of the highway. All the bridges were built by the defendant. The construction and dimensions of the first two bridges were, as the evidence tends to show, approved by the turnpike company. The present bridge was built after the rights of the turnpike company had been extinguished and the road had become an ordinary highway. No question arises in this case as to the construction of that clause in the fifth section of the defendant's charter, which requires a highway crossed by a railroad to be restored to the satisfaction of the commissioners of highways of the town.
The construction of defendant's railroad across the highway was authorized by law. This method of crossing below the highway, was manifestly much safer than if the crossing had been on grade. While the right of the defendant to cross below grade is not disputed, it is claimed in behalf of the people that the duty of restoration imposed by the defendant's *Page 270 
charter, could only be performed by constructing the bridge of the width of four rods, that being the width of the highway. We think this construction cannot be maintained. It is not usual to construct bridges on country roads of the full width of the highway. The construction by a railroad of a bridge of less width than the highway, is not, we think, per se, a nuisance. It would depend on circumstances. It might in some places be necessary that a bridge should be of the full width of the highway, while in the other locations it would be quite unnecessary. The location of the bridge, whether in or near a city or village, or in a populous district, the extent of use of the highway, the expense of the work, and other circumstances may properly be considered in deciding the question whether the duty of the railroad company has been discharged. So also a bridge, adequate when built, may by the growth of population, become inadequate for the public accommodation. The question would then be presented, whether the duty would not be enlarged pari passu
with the public necessity. But for the decision of this case it is sufficient to say that in our judgment the trial judge omitted to accompany his instructions to the jury with the proper qualifications. He should have submitted it to them to find upon all the circumstances whether the defendant unnecessarily impaired the usefulness of the highway by the manner of constructing the bridge. That a railroad crossing will to some extent, impair the usefulness of a highway, is implied in the language of the statute.
We think the order should be affirmed.
All concur, except TRACY, J., absent.
Order affirmed.