JAMES S. CONDIFF, *as Administrator of the Estate of C. W. Condiff, deceased*, v. THE KANSAS CITY, FORT SCOTT & GULF RAILROAD COMPANY.

1. RISKING LIFE—*Employé, When Not Negligent.* Exposure of life by an employé to save life is neither wrongful nor negligent, if attempted within the scope of an employé's duty, unless made under circumstances constituting rashness in the judgment of prudent persons.

2. ———— *Question for Jury.* Where an exposure is made for the purpose of saving human life and the person making the exposure is injured thereby, it is for the jury to say whether the conduct of the party injured is to be deemed rash or reckless.

3. ———— *Instructions.* The trial court is not required to give instructions which need limitations and qualifications to make them applicable to the case.

4. ———— *No Error.* The evidence and instructions in this case examined, and *held*, that the trial court committed no error, prejudicial to the rights of the plaintiff, in giving or refusing instructions.

*Error from Bourbon District Court.*

ON the 6th day of September, 1887, *James S. Condiff*, as administrator of the estate of C. W. Condiff, deceased, brought his action against *The Kansas City, Fort Scott & Gulf Railroad Company* to recover $10,000 damages for injuries received by Charles W. Condiff on the 3d day of November, 1885, from which injuries he died soon after. The railroad company filed an answer, denying generally the allegations of the petition, and also alleging "that if the intestate of the

plaintiff was injured by defendant, the negligence of said intestate directly and proximately contributed to said injury." Trial had at the May term of the court for 1888, before the court with a jury. The jury returned a verdict for the railroad company. The plaintiff filed his motion for a new trial, which was overruled. He thereupon excepted to the rulings of the court and the judgment rendered, and brings the case here.

*Ware, Biddle & Cory,* for plaintiff in error.

*Wallace Pratt,* and *Chas. W. Blair,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Charles W. Condiff, deceased, was, on November 3, 1885, a section foreman on the line of the Kansas City, Fort Scott & Gulf Railroad. He had charge of a crew of five hands working section No. 32, between the villages of Arcadia and Mulberry, in Crawford county. The latter village was the headquarters of the foreman and crew, and the point from which they all started on the day named, on a hand-car, at seven o'clock A. M., to work on the track at the mouth of the cut where they had been engaged the day before. Besides the six men on the hand-car, there were dinner buckets, water pails, material, torpedoes, spikes, shovels, picks, and other tools. The distance that the party had to go was about five and a half miles, and there was a freight train —No. 33—south bound, due and behind time to be met. They knew that some place on the line, before arriving at their destination, they would probably meet this train, and on the route they stopped to listen for the train, not being able to hear it while the hand-car was in motion. The wind was from the south, blowing in the same direction they were going, which made it still more difficult to hear a train approaching them from the north. From the last stop their course, a distance of nine hundred and fifty-four feet, was over a bridge and a long trestle and dump or fill, on which it was not practicable to remove their hand-car and tools

17 — 45 KAS.

without pitching them down where they could not get the hand-car back, if at all, without great labor. From the last stop they proceeded over the bridge, trestle, and fill with great haste to their place of work, which was at the end of the fill and mouth of the cut, where there was a public roadway across the track. They heard and saw nothing of the train before the start over the bridge. They could make the nine hundred and fifty-four feet in about a minute. At the time they arrived at the crossing or point of work, they saw the train rounding a curve into the cut. This train consisted of an engine, tender, and a large number of empty freight cars. One of the witnesses of plaintiff testified that the hand-car was about ninety feet from the engine when he first saw it. Although he testified afterward that when they arrived at the place for work, he saw the train two hundred and fifty yards (or seven hundred and fifty feet) distant. The engineer testified that when he first saw the hand-car he was distant from it about one hundred and fifty feet, and that he saw it as soon as it came in line of vision; that he could not see it before because of the cut and curves on the line of the railroad. The hand-car was slacking speed at the crossing just as the crew saw the engine. The train was behind time, and was running rapidly on a slight up-grade through the cut. After the parties on the hand-car saw the engine they stopped it as soon as they could. After the hand-car was stopped Condiff gave the engineer of the train a signal to slow up. He then turned round (before this he had been facing the engine) and attempted, with the section men, to take the hand-car off the track. There did not seem time for this to be done, and Condiff told the men with him "to let loose the hand-car." The men let loose the car, left the track, and were uninjured. Condiff did not make any effort to get off the track. The engine struck the hand-car and injured him so that he died within a few days. When the engine struck the car it went up on the pilot under the head-light, and the tools were scattered along the track.

The plaintiff's theory is that the freight train was behind

time; that it was running faster than the rules of the road permitted, in order to make up lost time; that it could have been stopped on the grade inside of four hundred and fifty feet; that the front brakeman was riding on the engine, where he had no business, and that the deceased lost his life in trying to save the property of the railroad company and the lives of its employés. The court refused to give the following instructions, which were asked by the plaintiff:

"1. If from the appearances, the deceased believed that by pushing the hand-car forward and getting it in motion he could avert a wreck of the train and probable loss of life consequent thereon, it was not negligence on his part to make the attempt, even though he believed that he might fail and receive an injury himself.

"2. Under the circumstances in which the deceased was placed, he was justified in using every prudent effort in his power to avert the wreck of the freight train and the loss of life that might result therefrom, and if he so acted and lost his life, he cannot be charged with negligence.

"3. It is not negligence in an employé to risk his life to prevent an accident that might be attended with loss of life to his coëmployés and great destruction of his employer's property.

"4. Exposure of life by an employé to save life, is neither wrongful nor negligent, if attempted within the scope of an employé's duty.

"5. If from the circumstances it appears to you that the deceased believed he could save the wreck of the train and the probable consequence of loss of life and property, and acted in that direction, and in so acting lost his life, his acts in that regard cannot be considered negligent."

On the contrary, the court instructed as follows:

"If C. W. Condiff saw the train time enough before the collision, under the circumstances as detailed in the evidence, to get out of the way and avoid accident, then the failure, if any, to sound the whistle would not make the railroad company liable for his death.

"If Condiff saw the danger of possible collision before it took place, and could have saved himself by stepping off the track, but did not do so, the plaintiff cannot recover.

"The defendant in this case sets up that Condiff contributed to the injury by his acts and conduct. Now, if you find

that the injury happened through his own fault, through his own carelessness or negligence in stepping or getting in front of the engine without using ordinary care or prudence, then he in that way contributed to the injury, and the plaintiff cannot recover in this case."

The important question, therefore, presented by the record is, whether the court committed material error in refusing the instructions prayed for. Most of the instructions refused, requested the court to charge as a matter of law that the deceased, in refusing to leave the track or hand-car, was not guilty of negligence, if at the time he believed, by pushing the hand-car or getting it in motion, he could avert the wreck of the train and probable loss of life. The instructions refused, stating as a matter of law that the deceased was not guilty of contributory negligence, were improper for three reasons : First, they directed the jury that if the deceased placed himself in the position of danger for the protection of property, he was not negligent; second, they were not limited or qualified by informing the jury that the efforts of the deceased to avert the wreck of the train and probable loss of life must have been so made as to be compatible with a reasonable regard for his own safety; that is, in his efforts to save life, he must not have acted under such circumstances as constituted rashness in the judgment of prudent persons; and, third, whether he acted prudently, under all the circumstances detailed in the evidence, was a matter to be determined by the jury, not the court. The court might very properly have stated to the jury, that they were to decide from all of the circumstances of the case whether the deceased used ordinary care or prudence in not leaving the track, or in getting in front of the engine. It did give an instruction somewhat similar to this.

We are in full accord with the decision announced in *Eckert v. Railroad Co.*, 43 N. Y. 502, and similar cases, that "the law has so high a regard for human life it will not impute negligence to an effort to preserve it unless made under circumstances constituting rashness in the judgment of prudent persons;" but where a

1. Risking life— employe, when not negligent.

person voluntarily places himself, for the protection of property merely, in a position of danger, we are not prepared to say that he is not negligent. If Condiff was struck by the engine of the train while attempting merely to protect the hand-car or tools from injury, we cannot say that he was free from fault or negligence. So much of one of the instructions which were refused, as stated "that exposure of life by an employé to save life is neither wrongful nor negligent, when attempted within the scope of an employé's duty," is a correct statement of the law, if it were qualified by the instruction, "if made under such circumstances as not constituting rashness in the judgment of prudent persons." The instructions refused did not contain this limitation or qualification.

3. Instructions.

When the exposure is for the purpose of saving human life, it is for the jury to say, from all the circumstances of the case, whether the conduct of the person injured is to be deemed rash and reckless. The court cannot, in such a case, charge as a matter of law that the exposure is not negligence.

2. Question for jury.

A careful reading of the evidence preserved in the record fails to convince us that sufficient was introduced to render a refusal of the instructions prayed for so erroneous as to reverse the judgment. Two of the persons who were upon the hand-car with Condiff at the time it was stopped testified upon the trial as witnesses for the plaintiff. One of these, William Preston, among other things, testified as follows:

"Q. Did Mr. Condiff, after last looking back at the engine, make any effort to get off the track? A. He did not, to the best of my knowledge. He seemed to be excited some way or other. His intention was to move the hand-car to prevent a wreck, I suppose.

"Q. What effort, if any, did his noticing the engine and his position at that time seem to have upon him? A. It did not seem to have any effect on him; he seemed to be dumb struck at that time, and did not seem to realize what he was doing."

The other one, George A. Fisher, testified, among other things, that —

"Q. How fast was the train going when you first saw it? A. About twenty-five miles per hour, to the best of my judgment.

"Q. What did Condiff do with reference to checking the train when he first saw it, if anything? A. He didn't do anything when he first saw it, until the hand-car was stopped; then he gave the engineer signal to slow up.

"Q. What did he do then? A. He turned around, he had been facing the engine before, and attempted to take the hand-car and tools off the track.

"Q. Describe fully the situation at the time he was injured and just prior thereto? A. Well, I can't describe his position just immediately before. I had to look out for myself. When the damage was done, I was on one side of the train and he was on the other. When I last saw him he had just returned from facing the engine to the hand-car and told us boys 'to let loose the hand-car,' and that was the last I saw of him till the damage was done. I could not swear to his taking hold of the hand-car, for I did not see him. We were trying to get the hand-car off the track. When he first got off, he signaled the engineer to slow up, then told the boys to let loose the hand-car, then we got away — left the track entirely.

"Q. Was the hand-car moving from the engine at the time it was struck? A. I could not answer that because I was not looking, I was looking the other way.

"Q. Why were you trying to get the hand-car off the track? A. It was company property, and we wanted to save it and to prevent a wreck.

"Q. What effect, if any, did Condiff's noticing the engine and his position at that time have upon him? A. He seemed to be terribly excited."

There was no evidence showing or tending to show that the freight train coming at the rate testified to was liable to be wrecked by striking the hand-car. It did strike the hand-car without materially injuring the train, or anyone on it. The hand-car, when struck, went up on the front of the engine and the tools upon it were scattered. The only per-

son injured was the deceased.  One witness testified that it was the intention of Condiff to move the hand-car to prevent a wreck.  Whether he meant the wreck of the hand-car or the wreck of the train, he did not state.  Even this evidence was his opinion only.  In the excitement under which he was acting, Condiff may have desired to save the hand-car, which was in his charge, as also the material and tools upon it.

While we may take judicial notice, considering the speed of the train and the position of the hand-car, when the men, at Condiff's instance, gave up the attempt to lift the hand-car off the track, that a collision between the two was inevitable, we cannot say, with the meager evidence before us, that by the engine striking the hand-car there was imminent danger to the lives of the employés upon the train, or to any one of them.  The evidence shows, however, that all the efforts of Condiff to lift or throw the hand-car from the track had ceased, as being impracticable, before he told his men " to let loose the car."  After that, he had the opportunity to leave the track.  He did not leave, but remained alone by the hand-car.  It is not shown by any evidence that his subsequent attempt to give the hand-car a backward motion, averted or was liable to avert injury to the employés on the freight train, or any one of them.  We know that moving the hand-car backward would cause less resistance to the speeding train, but whether this would be of any practical benefit to prevent the train from being thrown off the track by a collision with the hand-car at the rapid rate it was going, we cannot determine, nor could the jury determine, without some evidence.  No expert, railroad man or other witness, testified upon this point.

Considering the scantiness of evidence as to the probable or possible effect to the employés on the freight train from a collision with a hand-car, and the failure of the instructions refused to contain the limitations or qualifications pointed out, we cannot say that error prejudi-

4. No error.

cial to the plaintiff was committed in giving or refusing instructions.

The judgment of the district court will be affirmed.

All the Justices concurring.