THE INHABITANTS OF THE TOWNSHIP OF RARITAN

*v.*

THE PORT READING RAILROAD COMPANY.

1. The right of a railroad company, organized under the General Railroad law (*Rev. p. 925*), to invade highways between its termini, for the purpose of crossing, exists by necessary implication.

2. Authority for such invasion is limited, however, to the necessity of the railroad in crossing.

3. Section 102 of the General Railroad law (*Rev. p. 929; Rev. Sup. p. 828 § 9; P. L. of 1887 p. 226*), providing for the construction of bridges and passages over, under and across a railroad where a highway crosses it, imposes a duty looking to the reparation of an injury lawfully done, and carries with it no authority or power save that which is incidental to its exercise.

4. If a railway company so builds its road as to cross a highway above its grade, it must bridge the entire width of the highway.

5. Except for special and urgent reason equity will not interfere to redress the grievance of a public nuisance, where the object sought may be as well attained in the ordinary tribunals; and where the grievance is a misdemeanor, subject to indictment, equity will interfere with great reluctance, even though its intervention be sought by the attorney-general, and then only to prevent a very serious public injury.

6. The erection of bridge abutments upon the sides of an unfrequented country road, which are not presently used, or needed for use, but are over-grown with brush and weeds, will not inflict a serious public injury of the character which will induce this court to interfere by preliminary injunction.

On order to show cause why injunction shall not issue.

*Mr. H. Brewster Willis* and *Mr. Charles L. Corbin,* for the complainants.

*Mr. John R. Emery,* for the defendant.

THE CHANCELLOR.

The defendant railroad company is erecting, in the public highway known as Smith road, two abutments, twenty-five feet apart and about seventy-five long and six feet wide, upon which it proposes to erect a bridge, over the highway, for its railroad. At the point where the bridge is to be erected the entire width of the road is fifty feet, and the part in actual use by vehicles is about twelve feet wide. It is not even pretended that, to enable the defendant to bridge the highway, it is necessary to place the abutments in the road. On the contrary, it plainly appears that the abutments are to be placed close to each other in the highway merely because it will be less expensive to build such a bridge than to erect one with a fifty-foot span.

The width between the abutments, and the height of the bridge, will be sufficient to accommodate the uses to which the road is at present put.

The questions presented are—*first,* whether the defendant has authority to obstruct the road by placing therein abutments, when such occupancy and obstruction is not necessary to its cross-

ing; and, *second*, whether this court will, at the instance of the complainant, interfere by injunction to prevent such an occupancy and obstruction of the road.

The defendant is incorporated under the General Railroad law, and by that statute acquires whatever rights it possesses in crossing highways.

That it may cross a highway cannot be questioned. That right is given by implication, from the bare authority to build a railroad connecting distant points between which there exist highways that must be crossed, and, as well, from expressions in the statute which assume its existence, and, as it is impossible for a railroad to cross a highway without some incidental interference with it, such interference is also of necessity made lawful. These rights, however, must be limited to the necessity of the railroad in crossing. The courts will not assume that any authority in a highway is given, except that which the statute plainly indicates, either in express terms or by clearly necessary implication, for every interference with the highway is an encroachment upon a pre-existing public right, which can only be tolerated when the law clearly sanctions it. " Public highways," said Chief-Justice Whelpley, in *Warren R. R. Co.* v. *The State, 5 Dutch. 353*, " ought not to be destroyed, even in part, under pretence of legislative authority, unless it be conferred either in express terms or by necessary implication. If the words are ambiguous, the construction ought to be in favor of the common highway, not against it."

In *Attorney-General* v. *Hudson R. R. Co., 1 Stock. 558*, Mr. Justice Potts puts the principle, so well stated by Chief-Justice Whelpley, as follows: " All grants of special privileges are to be construed strictly against the grantees and liberally in favor of the public, and he who claims authority to impair or obstruct this right" [right of navigation] " by legislative grant must show it by clear and explicit terms of the grant itself, or at least by necessary implication."

The General Railroad law, section 102 (*Rev. p. 929*), amended in 1882 (*Rev. Sup. p. 828 § 19*) and again in 1887 (*P. L. of 1887 p. 226*), provides that it shall be the duty of a railroad company;

organized under that act, "to construct and keep in repair good and sufficient bridges and passages over, under and across the said railroad * * * where any public or other road * * * now or hereafter laid shall cross the same * * * of such width and character as shall be suitable to the locality in which the same are situated * * * so that public travel shall not be impeded" by the railroad.

It is insisted that this provision authorizes any encroachment, in crossing a highway, which will leave a sufficient passage to accommodate public travel in the highway at that point; that the force of the words, "width and character as shall be suitable to the locality," is to give authority to the railroad company to appropriate and narrow the public highway, where it crosses or is crossed by the railroad, to its own uses, provided a passage, adequate for public accommodation, be left.

The case of *The People* v. *New York, New Haven and Hudson River R. R. Co.*, *89 N. Y. 266*, is cited in support of this insistment. In that case it was held that, under a provision of law, that in crossing a public highway the railroad company should restore "the highway, as near as may be, to its former state, so as not unnecessarily to impair its usefulness;" the railway company might erect a bridge over its railway narrower than the highway if the bridge, when built, should be adequate for the public accommodation.

I do not think that the insistment is sound, for I fail to find in the statute any expression of legislative intent to invest the railway company with the right to go into unnecessary permanent occupation of any portion of the highway. The case just cited treats of the exercise of the duty of restoration when the highway has been necessarily and, therefore, lawfully injured, and not of the right to injure it in the first instance. If a railroad cross the highway at grade, its rails must necessarily obstruct the road; so, if it cross below grade, the necessary cut will be a barrier to public travel; so, also, it may be, after a railroad is built across a highway at grade, the frequency of trains or multitude of tracks will render it necessary for public safety and convenience that the highway shall be passed under the railroad.

In each of these cases a passage must be provided to take the place of that which has necessarily been taken away or obstructed.

To remedy the injury which the railroad thus does, an active duty is contemplated. The railway company must "construct" a bridge or passage. It is when it is called upon to perform this active duty that the bridge or passage may be of a width suitable to the locality. The duty extends to two classes of cases: where a highway, necessarily injured in building the railroad, is to be restored, and where a road is laid across a railway after the latter has been built. It will not be necessary at this time to consider the latter class of cases. The purpose of imposing the duty, in reference to the former class, is to secure a substitute for that which is necessarily and lawfully taken away, and the law requires no more than that such substitute shall be sufficient to accommodate public travel at its location. If the substitute shall not originally be made of equal capacity with the highway, it must, from time to time, be enlarged as public accommodation demands, until it shall reach the full capacity of the road. *Central R. R. Co. v. State, 3 Vr. 220.*

From the mere imposition of this duty no authority to permanently occupy any portion of a highway is to be implied. The law contemplates, as has been said, simply a restoration to the public after a lawful entry upon an existing highway, and it carries with it no right save that which is incidental to its exercise.

I think that such is plainly the scheme of the statute considered. It may be summarized in the statement that the railroad company's right in a highway crossed is restricted to its necessity, and its duty in making reparation for the injury it necessarily does, is measured by the necessity of the public from time to time.

I do not perceive that the law gives any authority to a railroad company, determining to cross an existing highway above its grade, to encroach upon it merely for the purpose of cheapening the construction of its railroad. Saving to the railroad company is not such necessity as the statute contemplates. When

the railroad is so built as to cross a highway above its grade, it must bridge the entire width of the highway, whatever the expense may be. By a supplement to this law, passed April 24th, 1890 (*P. L. of 1890 p. 273*), the legislature has practically recognized this interpretation of the statute, for by that supplement it assumes that, in a crossing by bridge, obstructions cannot be placed in the highway, and gives authority to place piers at the outer edge of the wagonway if the railroad company shall give, from its own land behind the piers, an equivalent for that which they shall occupy.

But will this court, at the instance of the complainant, interfere by injunction to prevent the proposed obstruction of the road in question.

The right of the complainant to maintain such a suit as this has been settled in this state. *Greenwich Township* v. *Easton and Amboy R. R. Co., 9 C. E. Gr. 217 ; S. C. on appeal, 10 C. E. Gr. 565.* The jurisdiction of courts of equity to redress the grievances of public nuisances is also established beyond doubt, but, at the same time, it is also settled, that, in absence of some special and urgent reason, equity will not exercise that jurisdiction where the object sought may be as well attained in the ordinary tribunals; and where the grievance is a misdemeanor, subject to indictment, equity will interfere with great reluctance, even though its intervention be sought by the attorney-general, and then only to prevent a very serious public injury. *Attorney-General* v. *New Jersey Railroad and Transportation Co., 2 Gr. Ch. 136 ; Attorney-General* v. *Heishon, 3 C. E. Gr. 413 ; Attorney-General* v. *Brown, 9 C. E. Gr. 90 ; Attorney-General* v. *Delaware and Bound Brook R. R. Co., 12 C. E. Gr. 26 ; Inhabitants of Woodbridge* v. *Inslee, 10 Stew. Eq. 397.*

This case does not present such an injury. The obstruction by the abutments will not seriously impede public travel. It has been shown that the travel over the highway in question is merely nominal; that the roadway in use consists of a single wagon track; that the highway on each side of this wagon track, where the abutments are being erected, is overgrown by under-

brush and weeds, so that, for all practical purposes, the twenty-five-foot space between the abutments will be ample for the public accommodation at present and perhaps for years to come.

The remedy by indictment is sufficient to abate the nuisance and to restore to the public use the entire highway. *State* v. *Smith, 3 Zab. 130 ; State* v. *Morris and Essex R. R. Co., 3 Zab. 360 ; Freeholders* v. *State, 13 Vr. 263 ; State* v. *Addey, 14 Vr. 115.*

The most grievous hardship in withholding injunction at this time will, in case of indictment and judgment of abatement thereon, fall upon the defendant, that now deliberately resists the issuance of that writ, upon the very ground that there exists this ample remedy against it. The public, without more than nominal injury, can wait until such a judgment is had.

The order to show cause will be discharged, but without costs.