THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. ALLIE MAY HENRY.

No. 8503.

1. INJURY AT CROSSING—*Duty of Company*—*Wide Vehicles.* The duties required of a railroad company by paragraphs 1207 and 1262, General Statutes of 1889, as to the crossings of any regularly laid out public highway are continuing in their nature. The company should keep these crossings in such condition that the use of the highway by the public shall not be materially interfered with, nor the highway be rendered less safe and convenient to persons, vehicles and teams passing over it, except so far as diminished safety and convenience are inseparable from any crossing of the highway by a railroad; whether or not this requirement is fulfilled in any particular case is a question of fact for the jury to determine upon the evidence, under proper instructions. If, by the growth of business or the widening of the vehicles used or drawn upon the highway, a crossing becomes inadequate for the public accommodation, then it is the duty of the railroad company to widen it so as to be reasonably safe for the increased traffic and the widened vehicles drawn in the usual and proper manner.

2. ———— *Comparative and Gross Negligence.* The doctrine of comparative negligence does not obtain in this court; general instructions as to gross negligence should not be given in the absence of evidence thereof; and where there is evidence of gross negligence in a particular respect which had little or no relation to the casualty, an instruction as to gross negligence, if given, ought to be limited to the particular matter to which it is pertinent.

3. ———— *General Review.* Other questions as to instructions, evidence and particular questions of fact examined, and certain matters criticized.

*Error from Osage District Court.*
*Hon. William Thomson, Judge.*

REVERSED AND REMANDED.          OPINION FILED JULY 11, 1896.

STATEMENT BY THE COURT.

ON June 23, 1891, Frank B. Henry, a locomotive engineer in the service of the Atchison, Topeka & Santa Fe Railroad Company, came to his death in Ellsworth county by reason of a collision of his engine

with a Deering harvester-binder, which became fast upon the highway crossing on the section line between sections 31 and 32, in township 17, range 8. The crossing consisted of six planks, 14 feet long, between 11 and 12 inches wide and $2\frac{1}{2}$ to 3 inches thick, one being placed on the outside of each rail, and four between the rails. The only evidence that the highway had been regularly laid out was a copy from the record of the petition for opening the road, with the names of the petitioners, and an order of the board of county commissioners, of date July 8, 1879, stating that, after examining the petition and finding it to be in conformity to law, the clerk was directed to notify the township trustees to have the road opened; and this was certified by the county clerk to be a true and correct transcript from the road records, and containing all that appeared on the same with reference to laying out and establishing said road. Chapter 67, Laws of 1883, legalized all highways in Ellsworth county established and located by the board of county commissioners prior to January 1, 1883, and made the records and certified copies thereof competent evidence of the existence and validity of such highways.

Edmund Stredder, a farmer residing north of the railroad and owning land on each side of it, started from his home driving on the harvester-binder, with a view of cutting wheat on the south side of the railroad. The machine was 10 feet and 4 inches wide from the outside of the master wheel to the outside of the grain wheel. It cut a swath seven feet wide, and three horses, hitched abreast at the right or master-wheel end of the machine, were required for use in the harvest field, and Stredder started with the horses so hitched. When he came to the crossing, he expected the horse on the right hand or off side to walk outside

of the plank crossing, but, in going over, this horse crowded to the left to obtain a foothold on the planks, and this had the effect of so turning the machine and pushing it over, that the grain wheel was thrown so far east that it missed the plank, and struck against the north rail of the track, and the sickle bar was caught in some way under the rail. He urged his horses forward, but could not disengage the grain wheel and the sickle bar from the track, and, seeing the train coming from the east about 1,000 feet away, he gave the engineer a signal to stop, which appeared to be answered by two sharp blasts of the whistle, and the engineer applied the air-brakes to the locomotive and tender, and the conductor set the brake on the coach, and when about 435 feet from the crossing the engine was reversed; but these checks were insufficient to stop the train, and the locomotive struck the harvester-binder with great force. The pony trucks seemed to have been derailed by the sickle bar getting under them, and the drive wheels followed, breaking one of the rails, and the locomotive and the tender were turned over on the left hand or south side of the track where the embankment was about six feet high, and the engineer and the fireman were so scalded that they died in a few hours. Following the locomotive and tender were a box car, a coal-car loaded with nut coal, and a combination coach. The two former were turned over, but the coach only partially left the track. Jack McDonald, the head brakeman, when about 1,750 feet from the crossing, was sitting on top of the box car next to the tender, and saw Stredder driving up to the track, and soon thereafter he heard the whistle; but he seems to have taken no further notice until about the time the engine was reversed, when, seeing the machine on the

track, he ran back on the top of the car, jumped down upon the coal-car, and succeeded in saving himself, but without setting the brake on either car. Although there was no allegation of the incompetency of any of the crew, the court allowed such evidence as to McDonald, notwithstanding the objection of the railroad company. In a general instruction, however, the court directed the jury entirely to disregard any and all evidence of the competency or incompetency of any of the train crew. The nineteenth instruction was to the effect that the highway between sections 31 and 32 was legally established, and concluded as follows :

"If you believe from the evidence that the wreck occurred on that highway, over which defendant constructed its railroad after the highway was legalized in 1883, then I further instruct you that it was not only bound to restore it to a state not necessarily to impair its usefulness, but was also bound to construct and keep in repair its plank crossing over the same ; and, if the binder became fast by reason of the failure of the defendant to perform either of these duties, the defendant is liable for all the injuries resulting therefrom, provided the deceased was not himself at fault directly contributing to the same."

The next day, after the jury had retired to consider of their verdict, they came into court and the following proceedings took place :

"*Juror*. We want to know the meaning of instruction No. 19. *Judge*. Is that the one? *Juror*. Yes, sir. Where the sticking point is whether they were bound to put up anything more than the 14-foot plank. If the court can tell us whether they were bound to put more than the 14 feet we can agree. Some contend they have to grade it all up, and some contend that it is only 14 feet. We want to know the meaning of the feet — simply whether it should be graded up 14 feet, or whether it should be graded up 50 feet.

*Judge.* I shall attempt, gentlemen, to explain that when you come back at half past 7 o'clock.''

At that time the court further instructed the jury in writing as follows :

''You have asked of the court, gentlemen of the jury, some explanation as to the meaning of instruction No. 19, in regard to the question as to the duty of a railway corporation, where its road crosses and is constructed over a legal public highway, and you have been directed that it was not only bound to restore it to a state not necessarily to impair its usefulness ; and you are now further directed that if it is necessary so as not to impair the usefulness of the highway that it should be restored to its former state the whole width of the highway, outside as well as between the rails of the track, then the railway corporation was bound so to do ; and you are also directed that a railway corporation, where its track crosses and was constructed over such highway, is bound to build and to keep in repair its plank crossing over the same, and that is the kind of crossing mentioned and described in its construction, in instruction No. 22, already given you. Both of these duties are obligatory upon the railway corporation in both these cases, namely, to restore the highway to its former state or to such state as not necessarily to impair its usefulness and to build and keep in repair the plank crossing mentioned.''

Instructions 7 and 10 were intended to elucidate the distinction between the different degrees of negligence as applicable to the case, and both seem to direct a comparison of the negligence of the railroad company and that of the engineer. After the jury had been in consultation for the period of two days, the court amended these instructions by striking out the words directing a comparison of the negligence. Instructions 30 and 41 were respectively as follows :

''30. If you should find from the evidence in this case that the deceased, Frank B. Henry, as engineer

in the employ of defendant road, had ridden upon and over this crossing on an engine in the employ of defendant for more than a year previous to the injury complained of, every week-day; and in the day-time, and had a fair opportunity to learn the condition of the crossing, and of the railroad track on each side, then and in such case you are instructed that said Frank B. Henry, at the time of the injury complained of, is in law presumed to have known of the condition of this crossing, of its situation, and the manner of its construction, and of the railroad track on each side of the crossing, and is deemed in law to have assumed every risk of accident involved in its make, construction, and maintenance by the defendant during the time he so rode over the same, and at the time of the injury."

"41. You are further instructed that, if said Frank B. Henry, after he saw that the engine was about to collide with the binder upon the crossing, or after the derailment of the engine and before it had overturned, could safely have jumped and thereby have escaped injury, it was his duty so to have done; and, if he was able so to do, and failed therein, the plaintiff would not be entitled to recover, because said Henry would have been guilty of contributory negligence producing the injury complained of. But you are further instructed that, unless you can determine from the evidence that he was guilty of such contributory negligence, you shall not so infer or presume from the mere fact that he did not jump from the engine, unless it is further established by the evidence that he could with safety have jumped therefrom, and thus avoided injury to himself."

The plaintiff below recovered a judgment against the railroad company, March 22, 1892, for $5,250 and costs of suit, and this proceeding in error is prosecuted to reverse said judgment.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*Waters & Waters,* for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J.: I. The court correctly ruled that the highway was legally established, and this was prior to the construction of the railroad. It was therefore the duty of the company to restore the highway "to its former state, or to such state as to have not necessarily impaired its usefulness," and also to construct and keep in repair "a good and substantial crosssing, by securing on each side of each rail a board not less than 12 feet long, and not less than 10 inches wide and two inches thick, and . . . fill the space between the two inside boards with gravel or broken stones, or . . . floor the space with boards not less than two inches thick and 12 feet long." (¶ ¶ 1207, 1262, Gen. Stat. 1889.) These statutory provisions were under consideration by this court in *M. K. & T. Rly. Co. v. Long*, 27 Kan. 684, and *A. T. & S. F. Rld. Co. v. Miller*, 39 id. 419, but this case presents questions not raised in either. It seems probable that the jury interpreted the additional instruction as authorizing them to find that it was the duty of the railroad company to plank the crossing the full width of the highway in order that it might be restored to its former state of usefulness. We think the clause cited from paragraph 1207 means that the company must so restore the highway that its use by the public shall not be materially interfered with, nor the highway be rendered less safe and convenient to persons, vehicles, and teams passing over it, except so far as diminished safety and convenience are inseparable from any crossing of the highway by a railroad; and whether this requirement is fulfilled in any particular case is a question of fact

1. Duty of company at crossings.

for the jury to determine upon the evidence under proper instructions. It is unusual, and generally unnecessary, to construct such crossings of the full width of a country road, although it may be requisite as to some of the streets in a city. The location of the crossing, whether in a city or other populous district or in the country, the extent of the use of the highway, the expense of the work, and other circumstances may properly be considered in deciding whether the duty of the railroad company has been discharged or not. So, also, a crossing adequate when built may, by the growth of business, or change in the width or character of the vehicles used or drawn upon it, become inadequate for the public accommodation. In such case it is the duty of the railway company to widen the crossing so as to be reasonably safe for the increased traffic and the widened vehicles drawn in the usual and proper manner. The planks used for this crossing were longer, wider, and thicker than the minimum requirement of said paragraph 1262, and yet it seems that the crossing was not wide enough for the harvester-binder to pass over in safety when drawn by three horses abreast. It is necessary to go upon the highways for the purpose of taking farm machinery from one place to another, and railroad companies must take notice of this, and widen their crossings, when necessary for the public convenience. The evidence does not show whether the machine in question was of unusual width or not, and, if its width was exceptional, and it was an uncommon occurrence for a vehicle or machine requiring so much breadth of crossing for its accommodation when drawn in the usual manner, it would be unfair to charge the railroad company with notice that a crossing of greater width was necessary. These principles

11—57 KAN.

are deducible from numerous authorities. (Elliott, Roads and Streets, 599, 600; *State v. St. P. M. & M. Rly. Co.*, 35 Minn. 131, 135; *Roberts v. Chicago & N. W. Rly. Co.*, 35 Wis. 679; *The People v. N. Y. N. H. & H. Rld. Co.*, 89 N. Y. 266, 270; *Cooke v. Boston & L. Rld.*, 133 Mass. 185; *Wellcome v. Inhabitants of Leeds*, 51 Me. 313; *Manley v. St. Helens C. & R.*, 2 Hurl. & N. 840.) In the following cases railroad companies have been held liable for defective crossings: *Wasmer v. D. L. & W. Rld. Co.*, 80 N. Y. 212; *Payne v. Troy & B. Rld. Co.*, 83 N. Y. 572; *P. F. W. & C. Rly. Co. v. Dunn*, 56 Pa. St. 280; *I. & St. L. Rld. Co. v. Stout*, 53 Ind. 143; *O'Connor v. Boston & L. Rld.*, 135 Mass. 352. The instructions of the court, however, as probably understood by the jury, left no middle ground for the requirement as to the crossing between that existing and one the full width of the highway, and in this we hold that the court erred.

II. Instructions 7 and 10 were erroneous as originally given, the doctrine of comparative negligence not obtaining in this court. All reference to gross negligence in the instructions should have been omitted, unless as applied to the failure of McDonald to set the brakes. It is true that many of the ties west of the crossing were rotten, yet it is hardly possible that the engine would have held to the rails or remained upright if they had been sound. The strain upon the track caused by the collision with the machine was so great that either the rails or the ties were almost sure to give way, and such an unusual event could not have reasonably been within the contemplation of the railroad company. It may be that, if McDonald had set the brakes when the signal was given, the force of the collision would have been lessened to the extent of

*2. Comparative and gross negligence.*

preventing the derailment and overturning of the engine; but even this is improbable, for the application of the air-brake on the engine and tender and of the hand-brake upon the coach seemed to have retarded the speed of the train only about three miles per hour, according to the evidence. The primary cause of the casualty was the obstruction of the track by the machine, and if the railroad company did not exercise ordinary care in having a crossing at that point wide enough for the accommodation of such vehicles as might be reasonably expected upon the highway, and the injury complained of resulted therefrom, then the company is liable. The negligence of McDonald, or the failure of the company to have a better track, or both, would be sufficient to justify a recovery if the injury were directly traceable thereto; but the evidence adduced seems to us insufficient to warrant a recovery upon either or both of those grounds.

III. As the case must be tried again, we think it best to refer to some other questions, whether raised by the petition in error or not. We think that instructions 30 and 41, respectively, should not have been given. It would be exacting more

3. Duty of engineer to save himself.

than ordinary care of an engineer to require him to decide at his peril whether a crossing was sufficient for the use of all vehicles that might pass upon the highway, or even to know whether the track over which he was running was sufficient to endure an extraordinary strain upon it; and whether he should have jumped from the engine should not be made to depend upon his own safety in so doing. The safety of the crew and the passengers on board should be of first importance in the mind of an engineer, and the highest considerations of duty may require him to remain at his post to the last ex-

tremity.   Henry may have supposed that the colli-
sion would result in throwing the machine from the
track, and that his engine would hold fast to it.    But
it should have been left to the jury to determine
whether under all the circumstances it was negligence
on the part of the engineer to remain on his engine.
This court held, in *Condiff v. K. C. Ft. S. & G. Rld. Co.*,
45 Kan. 256, 261, that when the exposure is for the
purpose of saving human life, it is for the jury to say,
from all the circumstances of the case, whether the
conduct of the person injured is to be deemed rash
and reckless.    See, also, as to an engineer remaining
at his post:  *Cottrill v. C. M. & St. P. Rly. Co.*, 47 Wis.
634, 638 ; *Central Rld. Co. v. Crosby*, 74 Ga. 738, 748 ;
*The Pennsylvania Co. v. Roney, Adm'x*, 89 Ind. 453, 455.

Stredder was allowed to testify to his opinion as to
the safety of the crossing, and said that he considered
it, like other railroad crossings through the country,
too narrow for safety, and the court refused to strike
out his answer on the ground of incompetency.    It
was a question for the jury to determine as to the
sufficiency of the crossing, after being informed of its
width and of the character of the vehicles passing
over it as usually drawn, and opinion evidence as to
its safety was incompetent.

Many of the questions submitted to the jury were
leading and negative in form, and others grouped to-
gether several questions in one.    These faults should
be avoided hereafter.

For the several errors referred to, the judgment will
be reversed, and the cause remanded for a new trial.

All the Justices concurring.