No. 21,677.

B. F. BUSH, as Receiver of the MISSOURI PACIFIC RAILWAY COMPANY, *Appellee,* V. THE UNION PACIFIC RAILROAD COMPANY, THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY and THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, *Appellants,* THE LEAVENWORTH TERMINAL RAILWAY AND BRIDGE COMPANY and THE CHICAGO GREAT WESTERN RAILROAD COMPANY, *Appellees.*

SYLLABUS BY THE COURT.

1. CONTRACT—*To Keep Bridge Signals in "Good Condition"—Liability for Expenses.* Where the owner of a railway bridge entrusts a railway company with the management of the bridge signal system and charges the latter with the duty of keeping the signal system in good condition, the owner is liable for the managing railway's reasonable expenses in relocating the signals which are a menace to the lives of trainmen; and this liability exists although the signal system was installed many years ago according to the best methods then known and with the approval of the managing railway's chief engineer.

2. SAME—*"Good Condition" of Bridge Signals—Expert Evidence.* The opinions of experienced railway men touching the "good condition" of a set of signals set so close to a railway track as to imperil the lives and limbs of trainmen are competent evidence in an action to recover a claim for expenditures incurred in keeping a railway-bridge signal system in good condition.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed July 6, 1918. Affirmed.

25—Kan.—3099.

*A. E. Dempsey,* of Leavenworth, for the appellants; *Ralph M. Shaw,* of Chicago, Ill., of counsel.

*W. P. Waggener, J. M. Challis,* both of Atchison, and *C. F. W. Dassler,* of Leavenworth, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action seeks to charge the defendant, a railway-terminal bridge company, with the cost of making certain changes in the signal system used on and about the railway bridge which crosses the Missouri river at Leavenworth. The terminal company owns the bridge and leases it to certain railways which are defendants herein. The plaintiff owns a railway running north and south in close proximity to the west end of the bridge. In 1892, and again in 1898, the plaintiff undertook the obligation of keeping the bridge signal system in good condition and maintaining it in proper repair. The defendant owner of the bridge agreed to pay the bills therefor as rendered, and the tenant railways using the bridge guaranteed the prompt payment of the plaintiff's bills for these services.

During the years which have passed since the bridge and its signal system were constructed, a systematic movement among railway men for the safer operation of railroads has grown up. This is familiarly known as the "Safety First" policy of railroading. Railway companies have committees to devise and suggest the need of improvements to lessen or avoid railroad accidents. These committees are usually composed of the railway superintendent and a railroad man from every branch of the operating service—a roadmaster, a master mechanic, a trackman, engineer, fireman, conductor, brakeman, switchman, car man, and a shop man. One of these committees noticed that the signals on this bridge and at its western approach were too close to the track; they learned that an employee had been struck and knocked off a freight car and injured by the semaphore blade of one of the signals.

The matter was brought to the attention of the plaintiff, which was charged with the duty of keeping the bridge signal system in good condition. It set one or more of these signals back from the track, and changed one or two others from high signals to low or "dwarf" signals, in the interest of safety and

Railway Co. v. Bridge Co.

in accordance with present-day ideas of good railroading. For this outlay, plaintiff submitted a bill of costs to the defendant owner of the bridge; this the latter refused to pay.

The plaintiff brought this action, and obtained judgment against the owner of the bridge and against the tenant railways as guarantors that the plaintiff's expenses on the signal system of the bridge would be promptly paid by the bridge company.

The bridge company appeals, contending that it is not properly chargeable with the cost of relocation of these signals, and that its liability is limited by its contract to costs of maintenance; and that the word "maintenance" is defined and restricted in the contract of 1898 to mean "the necessary expense incurred in making repairs and renewals to said interlocking switch and signal plant."

The bill of expenses for which payment was demanded was for "labor and material in repairing, renewing, relocating and maintaining interlocking plant," etc. Defendant may be technically correct in contending that the relocation of the signal system was not "maintenance" within the restricted definition set down in the contract. But this court is of opinion that the relocation of the signals for the safety of railway trainmen was clearly within both the letter and the spirit of that provision of the contract which required the plaintiff to keep "the bridge signal system in good condition." And this expense was to be borne by the owner of the bridge. Moreover, if there had been no specific provision in the contract covering the subject, the defendant owner of the bridge would be bound to make the necessary changes to keep the signal system in good condition, and that would include a condition of safety; and since the defendant had chosen to select the plaintiff as manager and custodian of its bridge signal property, it was bound to reimburse the plaintiff for the reasonable and necessary expenditures made in the proper discharge of its duty. A point is urged that the signal system was installed many years ago in accordance with the plans of the plaintiff's chief engineer, and with his approval. That does not alter the case. Perhaps the signal system was adequate and safe at that time. Doubtless it was as good as railway knowledge and experience at that time could suggest. But with the lapse of years railway signal engi-

neering has progressed the same as other arts and sciences, and owners of railway property must keep up with the reasonable demands suggested by new ideas for the better security of human life; and necessary expenses for such new and improved methods and contrivances are merely one of the burdens attendant on the ownership of public-utility property. (*Railway Co. v. Henry*, 57 Kan. 154, 45 Pac. 576, 60 Kan. 322, 46 Pac. 486; *Water Co. v. City of Wichita*, 98 Kan. 256; 259, 158 Pac. 49.) Moreover, it was shown that railway rolling stock has considerably increased in size and width since the signal system was first installed, and this would require the signals to be set farther from the track than formerly.

The plaintiff questions the competency of evidence given by experienced railway men who testified that a signal system placed so close to the railway tracks as to cause trainmen to be knocked off the cars was not in good condition. This evidence was competent. (*Duncan v. Railway Co.*, 86 Kan. 112, 119 Pac. 356; *Baillod v. Grain Co.*, 93 Kan. 775, 782, 783, 145 Pac. 895; *Bushey v. Coffman*, ante, p. 209, 173 Pac. 341, syl. ¶ 3. See, also, discussion on opinion evidence of expert railway men, in *Railway Co. v. Railway Co.*, ante, p. 1.

The judgment is affirmed.