No. 41,802

JOSEPH E. BROCK, Administrator of the Estate of Ernest H. Shank, Deceased, *Appellant*, v. THE PEABODY COOPERATIVE EQUITY EXCHANGE, a Corporation, *Appellee.*

(352 P. 2d 37)

Opinion filed May 14, 1960.

*John H. Gerety,* of Wichita, argued the cause, and *Sidney L. Foulston, Enos E. Hook* and *Sidney L. Foulston, Jr.,* all of Wichita, were with him on the briefs for the appellant.

*John F. Hayes,* of Hutchinson, argued the cause, and *Robert J. Gilliland* and *C. W. Miller,* both of Hutchinson, and *David W. Wheeler* and *Edwin G. Westerhaus,* both of Marion, were with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action for damages brought by Ernest Shank for the wrongful death of his wife against The Peabody Cooperative Equity Exchange, defendant (appellee). From an order of the trial court sustaining defendant's demurrer to plaintiff Shank's amended petition, plaintiff appealed. Pending the appeal, Ernest Shank died and this action was later revived. It now proceeds in the name of Joseph E. Brock, administrator of the estate of Ernest H. Shank, deceased, plaintiff (appellant).

The petition alleged that Mary Elizabeth Shank, on November 25, 1958, was thirty-four years of age, in good health, employed and earning $280 a month; that she was the sole support of her husband, Ernest Shank, and their two minor children, Alex Joe and

Ann Marie, and that Shank and the two children were dependent upon her for the performance of all household duties and the nursing and raising of the children.

It was further alleged that during the day of November 25 defendant had administered to the wheat storage warehouse in question an amount of liquid cyanide gas to exterminate rats and insects which contaminated and destroyed the wheat, and that defendant knew such gas was both toxic and lethal to all forms of life; that between 7:45 p. m. and 8:15 p. m. of that day Mary Elizabeth was informed by a Johnny Skinner that her son, Alex Joe, was in defendant's wheat storage warehouse, which was located about one city block from her home, and she then proceeded with Skinner to the warehouse, where Skinner, who had a flashlight, climbed a ladder, approximately twenty feet high and attached to the warehouse, to an attached platform in front of a door (three feet wide and four feet tall) leading into the warehouse (Mrs. Shank remained on the ground) and upon reaching the platform he breathed fumes which caused him to lose his grip and fall some twenty feet to the ground; as a result he became unconscious and upon regaining consciousness he looked for Mrs. Shank but could not find her.

It was further alleged that Skinner, before falling, informed Mrs. Shank that her son had fallen into the warehouse and was in a helpless state, whereupon she, believing that if she could get to him she could rescue him from his position of peril and save his life, climbed the ladder and upon reaching the platform and looking through the door of the warehouse was overcome with the fumes of the cyanide gas coming from inside and fell through the open door into the warehouse, where the gas fumes caused her death.

It was alleged further that the death of Mary Elizabeth, without any contributory negligence on her part, was solely and proximately caused by the negligent acts of defendant acting through its agents and employees in the following particulars: (a) in failing to anticipate and guard against Mrs. Shank's attempt to rescue her child; (b) in failing to place an employee on the property to keep human beings out of the warehouse; (c) in not taking safety precautions to warn mature human beings of the toxic and lethal cyanide gas installation, knowing the gas was capable of killing "all forms of human life"; (d) in placing the gas in the warehouse without giving notice to the public, and Mrs. Shank in particular; (e) in permitting and instructing its managers, agents, servants and employees to place

a toxic and lethal chemical in the warehouse without properly instructing them as to the handling and the dangerous qualities of the same; (f) in permitting the use of this instrumentality on its premises when it knew or should have known the gas was toxic and lethal to human beings, particularly Mrs. Shank; (g) in not allowing a sufficient lapse of time after the placing of the chemical in the warehouse before permitting human beings to enter the premises; (h) in failing to provide a proper ventilation system in the warehouse; (i) in failing to rope off, post notices or otherwise warn the public of the danger in being on or near the warehouse; (j) in failing to rope off the area around the warehouse, post notices or otherwise warn the public of the presence of the gas in the warehouse; (k) in failing to securely fasten or lock all entrances in and to the warehouse or to provide means to prevent access thereto after placing the cyanide gas therein; (l) in failing to use and have available safety devices to prevent accidents of like nature in the warehouse; (m) in permitting humans to go into, upon or near the warehouse when it knew or should have known such procedure was extremely dangerous because the chemical used would cause death and did result in Mrs. Shank's death; and that by reason of the agency relationship between the members, agents, servants and employees of defendant, it was equally guilty of any and all acts of negligence committed by them.

It was also alleged that because of the death of his wife, Ernest Shank and the surviving child, Ann Marie, were damaged to the extent of $25,000.

Defendant demurred to the amended petition on the ground that it did not state facts sufficient to constitute a cause of action, in that the matters and allegations contained therein conclusively showed decedent, Mary Elizabeth Shank, to be guilty of negligence which proximately caused or contributed to her death, thereby barring any recovery therefor.

The question is whether the decedent mother, Mary Elizabeth Shank, under the allegations of the petition was guilty of rash and reckless conduct constituting contributory negligence as a matter of law so as to bar recovery by plaintiff.

Defendant concedes the general rule of law that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence as a matter of law in risking his own life or serious injury in attempting

to effect a rescue, provided the attempt is not recklessly or rashly made. However, defendant contends that even in an attempt to save human life one cannot rashly or recklessly disregard all consideration for his own personal safety without being charged with contributory negligence and that the allegations of the petition show such disregard as a matter of law. Defendant admits that this court has long recognized the first aforementioned general rule of law and has applied it in several cases. Our last enunciation on the subject is found in *Parnell v. Security Elevator Co.*, 174 Kan. 643, 258 P. 2d 288, wherein we held that where a decedent placed himself in peril in an effort to save the life of another he was not guilty of contributory negligence unless his conduct was reckless or rash.

Seventy years ago, in *Condiff v. K. C. Ft. S. & G. Rld. Co.*, 45 Kan. 256, 25 Pac. 562, this court laid down the humane rule that where the exposure is for the purpose of saving human life it is for the jury to say from all the circumstances of the case whether the conduct of the person injured is to be deemed rash or reckless. In the present case the trial court on the demurrer to the petition was not in a position to usurp the powers of the jury and say as a matter of law that the mother was guilty of rash and reckless conduct amounting to contributory negligence in attempting to rescue her child from peril. We faithfully adhered to the mentioned decision in *Railroad Co. v. Henry*, 57 Kan. 154, 164, 45 Pac. 576, *Smith v. Ice and Delivery Co.*, 117 Kan. 485, 232 Pac. 603, and *Parnell v. Security Elevator Co.*, supra. Kansas is in accord with the great weight of authority, if not the overwhelming authority.

Justice Cardozo, in speaking for the court in *Wagner v. International Ry. Co.*, 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1, stated:

"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also the the parent who plunges to its aid (*Gibney v. State of N. Y.*, 137 N. Y. 1). The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path (*Eckert v. L. I. R. R. Co.*, 43 N. Y. 502. Cf. *Matter of Waters v. Taylor Co.*, 218 N. Y. 248). The rule is the same in other jurisdictions (*Dixon v. N. Y., N. H. & H. R. R. Co.*, 207 Mass. 126, 130, and *Bond v. B. & O. R. R. Co.*, 82 W. Va. 557, with cases

there cited. Cf. 1 Beven on Negligence, 157, 158). The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had (*Ehrgott v. Mayor, etc., of N. Y.*, 96 N. Y. 264, 280, 281).

". . . 'The human mind,' as we have said (*People v. Majone*, 91 N. Y. 211, 212), 'acts with celerity which it is sometimes impossible to measure.' The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion."

See also annotation, 19 A. L. R., beginning at page 5.

It is not contributory negligence for a person to risk his life or place himself in a position of great danger in an effort to save the life of another or to rescue another from a sudden peril or great bodily harm. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it unless made under such circumstances as to constitute rashness in the judgment of prudent persons.

We are of the opinion that in the instant case the quality of acts of the mother in the situation confronting her should have been determined by a jury. Certainly, she believed that good would come of her attempt to rescue her son from the warehouse. She was not there for a frivolous purpose but to save her child from imminent peril. The law cannot say of her belief that a reasonable person would not have been able to share it. There was little time to deliberate and there was less time for delay, if the facts were as alleged in the petition. The mother had to choose at once, in agitation and with imperfect knowledge. Errors of judgment, however, would not count against her if they resulted from the excitement and the confusion of the moment. The reason that was exacted of her was not the reason of the morrow. It was reason fitted and proportioned to the occasion.

In *Walters v. Electric Light Co.*, 12 Colo. App. 145, 54 Pac. 960, 5 Am. Neg. Rep. 5, it is well stated that, "The instincts of a mother, when she sees her child in distress, will lead her to rush headlong to its rescue, without stopping to count the cost, or measure the risk which she is incurring; and to say that an act to which her affection irresistibly impelled her should be charged against her as something imprudent and unnecessary, would be to shock a sentiment which is as universal as mankind. The law is not the creature of cold-blooded, merciless logic, and its inherent justice and humanity will never for a moment permit the act of a mother

in saving her offspring, no matter how desperate it may have been, to be imputed to her as negligence, or at any time, or in any manner, used to her detriment. See Wharton on Negligence, § 308." See also annotation, 5 A. L. R. 206.

We find no authority in defendant's brief to sustain his contention that under the allegations of the petition in the instant case the mother was guilty of contributory negligence as a matter of law, and our research has disclosed no such authority.

It is another well-established rule that where one undertakes to rescue another from danger, the antecedent negligence of the person rescued is not imputable to the person effecting the rescue. (38 Am. Jur., Negligence, § 242, p. 931; *Bond v. B. & O. R. R. Co.,* 82 W. Va. 557, 96 S. E. 932, 5 A. L. R. 201, see annotation at page 206.) Under the allegations of the petition in the instant case it is immaterial how the boy got into the warehouse insofar as defendant's liability for its alleged negligence is concerned. (*Parnell v. Security Elevator Co.,* supra, p. 647.)

In view of what has been said, the judgment is reversed and the cause is remanded with instructions to the trial court to set aside its order sustaining defendant's demurrer, direct defendant to answer and, after issues are joined, proceed with an early trial of this action.

It is so ordered.