## SAYLOR v. UNION TRACTION COMPANY.

[No. 5,224. Filed April 23, 1907. Rehearing denied June 28, 1907.
Motion to vacate order overruling petition for rehearing
overruled October 15, 1907.]

1. TRIAL. — *Instructions.* — *Interurban Railroads.* — *Travelers.* —
"*Look and Listen*" *Rule.*—An instruction, in a personal injury
case, that the plaintiff was guilty of contributory negligence, as
a matter of law, for his failure to look up and down the street
railroad track which he was about to cross for an approaching
car, is erroneous, such question being one of fact for the jury. p. 384.

2. INTERURBAN RAILROADS.—*Crossing Tracks of.*—*Contributory
Negligence.*—Whether a pedestrian in crossing a street railroad
track in front of an interurban car which he might have seen,
but did not, is guilty of contributory negligence, is, under all of
the circumstances, a question for the jury. p. 386.

3. TRIAL. — *Instructions.* — *Interurban Railroads.*—*Pedestrians.*—
*Contributory Negligence.*—An instruction, that if plaintiff, when
attempting to cross the street railroad track, saw an approaching
car, he was guilty of contributory negligence, as a matter of law,
in attempting to cross in front thereof, is erroneous, such question
being for the jury. p. 387.

4. INTERURBAN RAILROADS. — *Pedestrians.* — *Respective Rights on
Streets.*—Interurban railroad companies and other users of the
streets have equal rights thereon, none having a right unneces-
sarily to interrupt others, and it is the right of every user to
assume that others will exercise ordinary care and caution to pre-
vent injuries and also to prevent any obstruction of the way of
others. p. 388.

5. SAME.—*Care.*—*Streets.*—*Travelers.*—Interurban railroad com-
panies must be watchful, cautious and careful in the operation of
their cars upon the streets, and must take notice of the frailties
of human nature and the confusion of persons upon crowded
street crossings. p. 389.

6. SAME.—*Travelers.*—*Danger.*—*Duty.*—Where a motorman sees
a traveler with his face turned from the car, evidently attempting
to cross the track, it is such motorman's duty to give warning
and, if that does not arrest the traveler's attention, to put his car
under control immediately and avoid a collision. p. 391.

From Howard Circuit Court; *James F. Elliott*, Judge.

Action by Robert Y. Saylor against the Union Traction
Company. From a judgment for defendant, plaintiff ap-
peals. *Reversed.*

*Bell & Purdum, St. John & Charles* and *Dailey, Simmons & Dailey,* for appellant.

*J. A. Van Osdol, W. A. Kittinger, C. C. Shirley,* and *Blacklidge & Wolf,* for appellee.

HADLEY, J.—This was an action brought by appellant against the appellee for damages for personal injuries sustained by the appellant by being struck by one of the appellee's interurban cars on Washington street, in the city of Marion. The complaint is in four paragraphs. The first paragraph is a complaint for damages for wilful injury. The second paragraph is for damages on account of the negligence of appellee in running its car at a high rate of speed, and omitting, while approaching the crossing where said accident occurred, to give proper signals, by reason of which negligence appellant was injured. The third paragraph is for damages on the ground of negligence, measured by a different standard than by the ordinary rules, by reason of the provisions of appellee's franchise and the ordinances of said city. The fourth paragraph is for damages on the grounds that appellee was a mere trespasser on the streets of said city, and therefore was a danger not to be apprehended by appellant, and that, being a trespasser and having no rights in the streets, it was its absolute duty to avoid injuring any person rightfully on said streets, in such case the doctrine of contributory negligence not applying. Issues were joined on these several paragraphs, the cause tried by jury, and a general verdict returned for appellees, together with answers to a number of interrogatories. Motion was made by appellee for judgment on the verdict. Appellant filed his motion for a new trial, which was overruled, and judgment rendered upon the verdict in favor of appellee. The errors relied upon for reversal are the giving of certain instructions at request of appellee, and the refusal to give other instructions asked by appellant.

The facts disclosed by the record, in brief, are as follows: Appellant was a man seventy-one years of age. His home

was on the east side of Washington street, about eighty feet south of the intersection of Washington street and Sixth street. Washington street runs north and south, and Sixth street east and west. In Washington street is a double line of street railway tracks. Cars passing north run on the east track, and cars passing south, on the west track. The crossing at Sixth and Washington streets is in a populous part of the city, and much frequented by persons in vehicles and on foot. On the day of the injury, at about 11:15 o'clock a.m., appellant left home, and as he stepped off of the veranda he looked south down Washington street two squares to Eighth street, but saw no car coming. He then walked on the sidewalk to the corner of Sixth and Washington streets, stepped off the curb into the street, and walked northwesterly towards the northwest corner of Sixth and Washington streets. When he was within three or four feet of the east track he turned his head towards the south and looked down said street forty or fifty feet, but he neither saw nor heard the car that struck him. At this time two cars were passing said crossing, on the west track, going towards the south. These cars were sounding their gongs, and his attention was directed to them. After glancing down the street, he stepped near the track, and was immediately struck by said interurban car and hurled high in the air, to a point twelve feet from the track, in a northeasterly direction. The interurban car sounded no gong or whistle as it approached the crossing and as it was passing the cars going in the opposite direction.

The evidence clearly shows that it was going at a very high rate of speed, variously estimated from ten to twenty-five miles an hour, and, as some of the witnesses testified, hurling paper and leaves up over the top of the car. The jury found by its answer to an interrogatory that it was running at a speed from ten to twelve miles an hour. It was about one-half an hour behind its schedule time. Appellant knew that no interurban car was due to pass that crossing at the time he endeavored to cross.

Appellant was very seriously injured. The motorman testified that he saw appellant when he left the curb and started diagonally across the street; that at that time the car was from 135 to 140 feet from appellant; that he observed that appellant was aged, and that he was looking towards the northwest, away from the approaching car; that, when it first became apparent to him that appellant was intending to pass in front of the car, he was ten or fifteen feet away, and before he could avoid the collision his car had struck appellant, although he applied the brakes and made an effort to stop the car after appellant's danger thus became apparent to him, but he took none of these precautions when he first saw appellant approaching the track; that, after the collision, the car ran 135 feet before stopping. It was shown that appellant at the time was possessed of good eyesight and good hearing; that a library building was being erected on the southwest corner of said Sixth and Washington streets, and a number of workmen were engaged there in dressing stone and otherwise engaged in constructing said building, making noise and confusion calculated to distract the attention of appellant.

The court, at the request of appellee, gave a number of instructions defining contributory negligence, also the law as it relates to wilful injury. The giving of these instructions was properly excepted to. All of these instructions were as strongly in the favor of appellee as they could well be drawn without directly contravening the law. Yet, while they were all of this nature, the giving of some of them was not error. Of these instructions, three, five, eleven, twelve, fourteen, and eighteen will here be considered. The third instruction advised the jury that "the plaintiff was bound to look and listen before stepping in such close proximity to the tracks of the defendant as to be struck by a passing car; and if, by the failure to take such precaution for his safety, he was injured, then such fail-

ure on his part would be negligence such as would prevent his recovery in this action, on either of the last three paragraphs of his complaint.'' The eleventh instruction, after some general rules, charged the jury as follows: ''The ordinary care required of the plaintiff in this case is, that if he had knowledge that the cars were running on both of said tracks, where Sixth street crosses said Washington street, and if he had knowledge that cars were running every few minutes of the day, and that it was a dangerous place to cross when cars were running on or approaching said crossing, then to be ordinarily careful and diligent he was required to look both ways upon said tracks, and to look, listen, and observe as to whether there were any cars approaching said crossing where he attempted to cross, and if he did not do so, but entered on or near said track without such ordinary care or caution, he cannot recover in this cause of action on account of the negligence of said defendant, as charged in the second, third, and fourth paragraphs of the complaint.'' The twelfth instruction, in part, was as follows: ''It is such person's duty to look, listen, and observe in each direction up and down the track for the approach of cars, and one who walks thoughtlessly and heedlessly along or near a street-car track without such observation, and without such care and caution, and is injured, cannot recover on the ground of negligence, on account of his own contributory negligence.''

The fourteenth instruction was as follows: ''Double tracks for electric street railways laid upon a public street of a populous city, where other public streets cross said tracks, are places of danger, and especially so where electric cars are running back and forth on said tracks every few minutes, and at such places the rule of law is that persons attempting or making an effort to cross the railroad tracks at such points are bound to look and listen, and it is a rule of law that at such places of danger every person is bound to

look and listen before attempting to cross said railroad tracks, for the electric cars upon such lines have a right to run their cars upon such lines of railroad, and the public and the plaintiff have a right to cross said railroad tracks, and to use said street on and across said railroad tracks, subject to the superior right of the defendant company in this case, as to a priority of passage, and if the plaintiff in this case failed or neglected, from any cause whatever, to look or listen for an approaching car, and did not see it for the reason that he did not use ordinary care to look and observe the same, then, in such case, he cannot recover for mere negligence on the part of the defendant.'' It will be observed that these instructions affirm as an absolute rule of law that a person when about to cross a street railway track in a populous city, at a much-frequented crossing, must look up and down the track and listen before attempting to cross. It excludes every reason or condition that might excuse such precautions on his part. Under the decisions of this State, and a number of other States, this rule is too strict. A man under such conditions must use his senses of observa-

2.   tion with due care, but to what extent or in what manner to constitute such due care must be governed by all of the facts and conditions surrounding him at the time. And whether his conduct under such conditions was the exercise of due care and that of an ordinarily prudent man, or was negligent, is a matter that must be determined, under all of the facts and circumstances, by the jury. Baldwin, American Railroad Law, p. 415; *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312; *Indianapolis St. R. Co.* v. *Schmidt* (1905), 35 Ind. App. 202; *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490; *Marchal* v. *Indianapolis St. R. Co.* (1901), 28 Ind. App. 133; *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426; *Evansville St. R. Co.* v. *Gentry* (1897), 147 Ind. 408; *Roberts* v. *Spokane St. R. Co.* (1900), 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184; *Robbins* v. *Springfield St. R. Co.* (1895), 165 Mass. 30, 42 N.

E. 334; *Consolidated Traction Co.* v. *Scott* (1896), 58 N. J. L. 682, 34 Atl. 1094, 33 L. R. A. 122, 55 Am. St. 620; *Shea* v. *St. Paul City R. Co.* (1892), 50 Minn. 395, 52 N. W. 902; *Schulman* v. *Houston, etc., R. Co.* (1895), 36 N. Y. Supp. 439; *Moebus* v. *Herrmann* (1888), 108 N. Y. 349, 15 N. E. 415, 2 Am. St. 440; *Fennick* v. *Boston, etc., St. R. Co.* (1906), 190 Mass. 382, 77 N. E. 500; *Copeland* v. *Metropolitan St. R. Co.* (1902), 67 Hun, App. Div., 483, 73 N. Y. Supp. 856; *Cincinnati St. R. Co.* v. *Snell* (1896), 54 Ohio St. 197, 43 N. E. 207, 32 L. R. A. 276; *Smith* v. *Union Trunk Line* (1897), 18 Wash. 351, 51 Pac. 400, 45 L. R. A. 169; *Peterson* v. *Minneapolis St. R. Co.* (1903), 90 Minn. 52, 95 N. W. 751, 1 Am. St. 419.

The eleventh instruction in effect told the jury that if appellant saw a car approaching the crossing and still endeavored to cross in front of it, he was guilty of negligence and could not recover. This is not the law.

3. The mere fact that a traveler can see an approaching car, by which he is afterwards struck, does not in itself establish his contributory negligence. It must not only be approaching, but must be in such close proximity that, taking into account the reasonable rate of speed for such places and present conditions, or apparent rate of speed at which the car is traveling, a reasonably prudent man would not attempt to cross. *Indianapolis St. R. Co.* v. *Bolin* (1906), 39 Ind. App. 169; *Union Traction Co.* v. *Vandercook* (1904), 32 Ind. App. 621; *Copeland* v. *Metropolitan St. R. Co., supra.* In the case last cited the court say: "We do not understand the rule to be, with respect to the rapid passage of electric cars, that a person seeing a car in the distance is obliged to wait until it has passed and cars are no longer in sight, for with the short headway between cars there is hardly a moment of the day when there would be such a situation. On the contrary, we have many times held that pedestrians are entitled to a reasonable use of the streets and street crossings, and, when exercising such rights, they are

justified in assuming that those managing the cars will respect them. If this is not the rule, and motormen are not required to observe some care in allowing pedestrians the reasonable use of streets and crossings, then, should they desire to cross our busy streets and avenues, in which electric cars are constantly passing, they could never get over, or, if they did, it would only be at risk of life and limb."

The fourteenth instruction, in addition to the "look and listen" rule, instructed the jury that the cars had a superior right of passage in said street. This is a misleading statement of law. The rights of a street railway and pedestrians to a street are equal. Neither has a su-. perior right over the other, except to the extent that, since a street-car runs on a track and cannot be turned out of the way, and its momentum renders it difficult to be stopped, it is the duty of a pedestrian to turn out or stop to avoid a collision. But the duty to observe and use all reasonable precaution to avoid a collision rests upon the street-car company the same as it does upon the pedestrian. Neither must interfere with the passage of the other to any greater extent than the necessity of the case requires. The pedestrian has the right to presume that the motorman of a street-car in a populous city, in passing a much-frequented crossing, will exercise due care in the operation of such car with reference to the conditions. The care that is required of the pedestrian at a particular crossing can only be properly measured by taking into consideration the care he has a right to expect will be exercised by those managing a street-car along the street he is about to cross. Whether he has a right to expect that the cars will be going at a slow rate of speed, that they will be under control, that they will give the proper signals of alarm to warn him of their approach—all should be considered in determining what is reasonably required of him in making such crossing. .

None of the instructions in this case intimated to the jury

that they should thus measure the acts of appellant in determining whether he negligently contributed to the injury. As was said in the case of *Smith* v. *Union Trunk Line, supra:* "Street cars have not, by any means, an exclusive right to the streets. The occupancy of the streets by street-cars, other vehicles, and pedestrians, is a joint occupancy, and the rules of care which are required of pedestrians in crossing street-car tracks are laws which are made to govern not the brightest, or the most alert, minds, but the ordinary mind; and the ordinary mind is often apt to be distracted with other thoughts than that of danger in crossing car tracks on the streets. As was very pertinently remarked by the respondent in his testimony in this case: 'One's mind cannot always be kept on the street-cars.' Of course, the pedestrian must exercise ordinary care to avoid consequences which might ensue from collision, and the care must be in proportion to the danger to be avoided. But the law must look at human minds just as they exist, with all their frailties, their inclination to abstract thought and absent-mindedness. Human life is of more importance yet than rapid transit, and if street-cars cannot reasonably protect life and limb while running at the rate of speed at which they do run, they have a remedy left; and that is to lessen their rate of speed and increase their watchfulness for the safety of those who must necessarily be the sufferers when a collision occurs. Bells, whistles, and signals of different kinds are used for the purpose of challenging the attention of people who are using the street, that they may protect themselves from these unfortunate collisions and accidents; and the citizen has a right to rely upon these signals which are in common use; and negligence should not be imputed to him by reason of such reliance." Mere inattention or mental abstraction will not excuse the exercise of ordinary care, and such care requires that a man shall be reasonably observant of his condition and surroundings.

But, as was said in the case of *Cincinnati St. R. Co.* v. *Snell, supra:* "Ancient rights have not changed because new vehicles of travel have been introduced upon the streets, nor because a portion of the people who ride, being in haste to reach their destination, demand rapid transit. The streets remain for all the people, and he who goes afoot has the right, especially at a crossing, to walk to his destination; he should not be compelled to run, or to dodge and scramble, to avoid collision with vehicles. As a general proposition, drivers of vehicles have the same right to travel along the carriageway of a street that foot passengers have to walk there. There is no priority of right, so that the right of neither is exclusive. But it is to be borne in mind that the injury by collision is wholly upon the side of the footman; and the right of personal protection which every person possesses, together with that moral and legal obligation to refrain from doing an injury to his person which is imposed upon all others, gives the foot passengers such a right at street crossings as to make it the duty of drivers of vehicles, whether wagons, wheels or cars, so to regulate their speed and give such warning of approach, at whatever cost of pains and trouble on their part, as that the footman, using ordinary care himself and barring inevitable accident, may cross in safety. * * * As matter of law, it is as much the duty of the vehicle to keep out of the way of the footman, and especially so at crossings, as it is for the latter to escape being run over, giving due consideration to the greater difficulty of guiding and arresting the progress of the vehicle. The use of streets for railways is allowed only because it is considered not to be a substantial interference with their free and unobstructed use as highways for passage. * * * Undoubtedly the footman must reasonably use his senses for his own protection, and if he knows of the approach of a vehicle, and, using his faculties, perceives that he cannot continue on without danger of collision, he may not rush forward regardless of consequences. He is not bound, however, to anticipate negli-

gence on the part of drivers of vehicles, but has the right to assume that they will not be negligent.''

Instructions five and eighteen were as follows: ''(5) If you find from the evidence in this case that the motorman in charge of the car, which struck the plaintiff on the occasion in question, saw the plaintiff walking from the east side of Washington street in a northwesterly course, approaching the tracks of defendant's railway ahead of said car, at a time when said car was running north on the tracks of said railroad, and if there was nothing to indicate to the motorman that the plaintiff did not know or that he could not, by looking or listening, learn of the approach of said car, said motorman had a right to assume that the plaintiff would not step upon, or in such close proximity to, said track as to be injured by said car, and said motorman was not required to stop said car until it became apparent to him, if it did become apparent at all, that the plaintiff was not going to stop in time to avoid being struck by said car.''

''(18) Where a motorman or conductor, operating an electric car on a street-car track on a public street in a city, observes a pedestrian in the street, or walking along the side of the track in front of said car, or one who is attempting to cross such track when there is no obstruction in the street, and there is nothing to prevent such person, by the proper use of his hearing and sight, from discovering such approaching car, such motorman has a right to presume that such person so walking in said street will keep a safe distance away from said track, and thus avoid any injury.''

These instructions, as abstract propositons of law, might in some cases be correct; but where, as here, a motorman running his electric car at a high rate of speed in a populous part of a city, sees an old man 140 feet away, crossing the street diagonally, with his back towards the approaching car, his attention turned therefrom, with cars on another track passing in front of him, and with nothing to indicate to the motorman that he is aware of the approaching danger, it is

no time to indulge in presumptions. It at once becomes the duty of the motorman to exercise all the reasonable care and watchfulness that, under the conditions, prudence demands. He must put into motion every reasonable means at his command to warn the pedestrian, and, if necessary, put his car under control until he has good reason to believe the pedestrian is aware of his approach, and should stop, if possible and necessary, to avoid a collision. *Indianapolis Traction, etc., Co.* v. *Smith* (1906), 38 Ind. App. 160; *Lake Erie, etc., R. Co.* v. *Juday* (1898), 19 Ind. App. 436; *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 137 Ind. 402; *Citizens St. R. Co.* v. *Lowe* (1895), 12 Ind. App. 47; *Cincinnati, etc., R. Co.* v. *Long* (1887), 112 Ind. 166.

In the case last cited the court say, on page 172: "Where those having the control and management of trains become aware of the presence of a person on the track, and have reason to believe from his appearance or from the manner in which he is occupied that he is either unconscious of, or unable to avoid, the danger of contact with the cars, it becomes their duty to use every reasonable effort to stop the train and arouse the attention of the person on the track. Unless those controlling the train have reasonable assurance that a person who is seen at work on the track is aware of the approach of the train, and that he is in a condition to apprehend and avoid the danger, they are guilty of negligence if they fail to give warning and stop the train. *Indianapolis, etc., R. Co.* v. *Pitzer* [1887], 109 Ind. 179, 58 Am. Rep. 387, and cases cited." These instructions were inapplicable to the facts and misleading to the jury, and it was error to give them.

Other questions are raised as to other instructions given and refused; but, since the cause must be reversed, we do not deem it necessary to consider them.

Judgment reversed.