ANDREW P. WESTINE, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

No. 16,841.

SYLLABUS BY THE COURT.

1. RAILROADS—*Duty of Employee at Work upon the Track.* A brakeman whose duties require his presence upon a railway track and who is actively engaged in giving signals for the movement of his train, and whose attention is necessarily absorbed in this work, is not required absolutely, as a matter of law, to look up and down the track for approaching trains, but must exercise such care for his own safety as the danger of his surroundings would suggest to a man of ordinary prudence, and the circumstances will permit.

2. CONTRIBUTORY NEGLIGENCE—*Employee Injured While at Work on Railway Track.* A question of contributory negligence arising upon the failure of a brakeman to look for an approaching train while actively engaged in giving signals for

the movement of his own train, and while giving necessary attention thereto, is held, under the evidence in this case, to be one of fact for a jury.

Appeal from Neosho district court. Opinion filed March 11, 1911. Affirmed.

### STATEMENT.

THIS is an appeal by the defendant from an order granting a new trial after a demurrer to the plaintiff's evidence had been sustained.

The plaintiff was a brakeman on a freight train running between Chanute, Kan., and Tulsa, Okla., and was injured while performing his duties at Tulsa. Three parallel tracks of the defendant extend north and south through that place, crossing Second, Third, Fourth and Fifth streets. These streets are 300 feet apart. The passenger depot is between Third and Fourth streets, with a platform extending from the sidewalk on Third street to a point twenty feet north of Fourth street. The first track east of the depot is the main track, the next one east of that is track No. 1, and still east of that is track No. 2. There is a switch from the main track, about 100 yards north of Third street, connecting with track No. 1, and another switch leads from a point on track No. 1, near the south end of the platform, southerly to track No. 2. On the day of the accident a string of box cars was standing on track No. 1, just south of the switch connection last referred to, and barely in the clear. A passenger train from the north was due to arrive at Tulsa at 6:55 o'clock P. M. The freight train on which the plaintiff worked had arrived before the passenger train came in, and was engaged in switching north of the depot. Having completed this work, the train was backed south on the main track, and thence to track No. 1, over the switch first mentioned, which was turned by the plaintiff. The train contained fifteen or sixteen cars. The plain-

tiff then threw the last switch to turn the train to track No. 2, and then ran to his place by the side of the first car next to the engine. He then walked south upon the depot platform, taking signals from the conductor, who was walking by the side of the caboose, and giving them to his engineer, as the train continued to back southwardly. When the conductor passed the end of the string of box cars above referred to the plaintiff, who was then opposite to the depot, still walking upon the edge of the platform, could not see him, and stepped to the east upon the main track in order to see the conductor's signals. While walking upon the track, facing south, with his hands raised, giving signals to the engineer, he was struck by the rear of the passenger train backing in on the main track from the north, which was its usual manner of approach to the depot. The passenger train was about 200 feet away when the plaintiff stepped from the platform. It was then growing dark, but the plaintiff with close attention could see the conductor's signals. There were no lights on the rear end of the passenger train, but it could be seen for about 300 feet from the platform. The plaintiff could not have seen the signals of the conductor if he had passed across the main track, because of a curve in the train made by passing from one track to the other, and could only see them from the main track. His train was moving at the rate of two miles per hour, and moved two car-lengths after he last stepped on the track before he was injured. The passenger train was coming in slowly on account of the freight train being in the way, and was running at the rate of six or eight miles per hour. The conductor was upon the rear platform, and his view was unobstructed, the main track being straight for a fourth of a mile north of the depot. The conductor was looking south. Just before the collision the air was thrown on, but too late to avoid the injury. A wit-

ness who was at the depot and saw the occurrence testified:

"As the passenger train backed in, it gave a signal after it passed Second street, a little whistle, kind of 'toot-toot.' Just before it struck him it gave another signal. During that time the conductor was on the rear of the train, looking southward. . . . It seems to me just before the train hit him the conductor blew his whistle. About the time it hit him he threw on all the air he had. Westine did n't have time to do anything after the conductor sounded the whistle. . . . It was between the depot, about half way between the two blocks."

Another witness who was upon the platform testified:

"The passenger train as it backed in that evening was not making any noise at all. The engine on the freight train was making a good deal of noise. I saw the passenger train when it first started above Second street. The conductor was on the back end of it. It whistled up there at Second street. That was the only time I heard it. . . . There were no lights on the train. When I first saw Westine he was about the center of the platform north and south, giving signals. He was looking south. I was on the south end of the platform. I could not say for sure what Westine was signaling with. He gave the signal and stepped off onto the track. That was down about the middle of the platform. He was going south diagonally. When he left the platform and went onto the track the passenger train was starting across Third street. That platform is about a block long, runs from Third street to Fourth street, about 300 feet. The train was coming in about six or eight miles an hour. They continued that speed up to the time they struck Mr. Westine. He fell south, and then it rolled him over."

A car inspector, standing on the platform, in his testimony said:

"I saw the passenger train come in that evening about on time, somewhere near 7 o'clock. It was getting dark. . . . I saw the passenger train between Second and Third streets, up there about the cut-off.

I saw the conductor of the passenger train standing on the back of the train, looking south toward the depot. I never heard any whistle at all. They might have blowed it just about the time they approached the depot, but I did n't hear it. I seen them hit this fellow."

Another witness in a situation to see and hear said:

"I saw the train come in that ran over him. I could see it as far as Second street. If it, whistled we could not hear it. . . . The back end of the passenger train was just coming across Third street. . . . I suppose he was giving back-up signals; he was swinging his lantern. He was looking south—had his face turned south."

The plaintiff testified:

"I did not see it [the passenger train]. I did not look for it. I did n't look back. I stepped on that track without looking. If I had looked I would have seen the train. Of course if I had seen it I would not have stepped in front of it. If I had not stepped in front of the train I would not have been injured. I could have seen train 221 as far north as I could see our way car south. The reason I did not see it is because I did not look; I had my face toward our conductor, and my back toward 221."

He also testified:

"It was getting very dark and we had to pay very close attention to the signals, that no accident might happen our train backing in there. . . . During the time that I was walking down the main-line track of the defendant before the train struck me I was giving signals. It was necessary in the proper performance of my duty at that time to look to the south to the conductor of my train. I was absorbed in the duty of my work."

Testimony of trainmen of competent knowledge and experience was offered to prove that by the use of the air brake on the rear of the passenger train, in the position in which the conductor was at the time, the train could have been stopped in about ten feet if going

at the rate of six or eight miles per hour, but was rejected.

From all the testimony it appears that the incoming train was in sight of the plaintiff when he stepped upon the track, but that he did not look for it, and did not see it; that he was closely engaged in the performance of his duty in receiving and giving signals, and that the passenger conductor had knowledge of the situation of the freight train, and saw the plaintiff and what he was doing.

Two bystanders who were in a position to hear testified that they heard signals of the approaching train, and two that they did not, the plaintiff testifying that he heard none at all.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellant.

*H. P. Farrelly,* and *T. R. Evans,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: The plaintiff contends that he was at the post of duty, the only place where he could perform it, giving close attention to the signals of his conductor, which it was necessary to do to prevent accidents to his train; that while so engaged, absorbed with duty and wholly unaware of danger, the passenger train, running quietly, without giving signals or warning, ran upon and injured him; and that this injury could have been prevented if the conductor of the passenger train had exercised ordinary care. On the other hand, the defendant contends that no negligence on its part is shown, but that the plaintiff, who knew that the passenger train would be backed in on the main track about that time, was bound to look out for it, whether the conductor gave warning signals or not; that the plaintiff's duty did not require him to be on the track, and that there was nothing in the circumstances to lull him into a sense of security; that the

plaintiff was negligent in entering upon the track without looking for the incoming train; and that this negligence continued down to the moment of the accident, and was a concurring cause of the injury. Contributory negligence is relied upon to bar a recovery, irrespective of any negligence of the defendant. As the passenger conductor was upon the rear platform of his train, observing the track, and saw the freight train going upon the siding and the plaintiff at his work, and as he was in control of the appliances for giving warning and for stopping the train, the situation presented a question of fact whether the conductor was negligent, and if this were the only question in the case it is plain that it could not be taken from the jury.

A more difficult question is whether the testimony clearly proves that the plaintiff is barred from recovery by his conduct in going upon the track and remaining upon it until injured, without looking for the train which he knew should come in about that time. This question, it appears, was first decided, as a matter of law, in favor of the defendant by sustaining the demurrer to the evidence, but afterward it was held that a question of fact was presented for a jury, and a new trial was ordered. If the evidence conclusively proved the plaintiff's negligence beyond cavil or dispute, the first decision was right; if it did not, the last order was proper and should be affirmed. (*Beaver v. A. T. & S. F. Rld. Co.*, 56 Kan. 514; *Johnson v. Railroad Co.*, 80 Kan. 456.) A new trial having been granted, the order will not be reversed unless error is clearly shown with respect to some pure, simple, unmixed question of law. (*Sanders v. Wakefield*, 41 Kan. 11.) The question is resolved into this: Is there any room for doubt or difference of opinion among men of reasonable intelligence, exercising candid judgment, whether the plaintiff used the care which an ordinarily prudent person would have exercised in the circumstances disclosed by the evidence? (*Grand Trunk Railway Co. v. Ives*, 144 U.

S. 408.) The rule imputing negligence as a matter of law to a traveler upon a highway who fails to look and listen for trains at a railroad crossing is not applied to employees whose duties require their presence upon the track. The failure to look and listen in such a case may or may not constitute negligence, according to the circumstances. The employee must exercise such care as the danger of his surroundings would suggest to a man of ordinary prudence and caution. (*Railway Co. v. Bentley*, 78 Kan. 221; *Baltimore, etc., R. Co. v. Peterson, Adm.*, 156 Ind. 364; *Goodfellow v. Boston, Hartford & Erie Railroad Company*, 106 Mass. 461; *McMarshall v. The Chicago, R. I. & P. Ry. Co.*, 80 Iowa, 757; *Jordan v. Chicago, St. P., M. & O. Ry. Co.*, 58 Minn. 8.)

It was said in *Railway Co. v. Bentley*, supra, that "the same degree of diligence is not required of one whose duty compels his presence upon the track as is required from a traveler about to cross." (p. 225.) In *Jordan v. Chicago, St. P., M. & O. Ry. Co.*, supra, cited in the Bentley case, it was said in the opinion, referring to the rule requiring travelers upon a highway to look and listen at railway crossings:

"That this rule is not to be applied to the case of one who is employed in a railroad yard, and whose duties frequently make it necessary for him to go upon the tracks, and the exigencies of whose duties may call upon him to do so without premeditation or time or opportunity to ascertain if it is dangerous to do so; that the act of such a person in placing himself upon the track, in the discharge of his duty, without looking or listening, is not *per se* negligence, but may be negligence or not, according to other circumstances in the case, of which the jury are to judge." (p. 9.)

This subject has been recently considered by this court in *Ray v. Railway Co.*, 82 Kan. 704, where it was held that as the plaintiff in that case was injured while performing a duty which required him to be upon the track he was relieved from the absolute duty of keeping a lookout, being required only to exercise reason-

able care in view of all the circumstances.   That was the case of an employee of an electric railway company injured while picking up a board, which, with some tools, had been left on the track.   He could have seen the approaching car when he stepped upon the track if he had looked, but he did not, and yet a general verdict for the plaintiff was upheld.   In the opinion in that case it was said:

"The jury found specially that the plaintiff could have seen the car if he had looked, and that the motorman could not have stopped it after seeing him upon the track in time to avoid the accident.   But the general verdict implies findings that the plaintiff's situation was such that he was under no absolute duty to keep a lookout, that he used diligence adapted to the situation, and that the motorman should have anticipated that he might get upon the track." (p. 707.)

If it be suggested that there is a distinction between that case and this, that there the workman was in a stooping posture, intent upon his work, while here the plaintiff stood upright and needed only to turn his head sufficiently for a backward look, then it should be observed that the laborer in the Ray case was in the same attitude when he stepped upon the track, and a look at that time would have revealed the danger to him also.   It is true that in this case the plaintiff knew that the passenger train should come in about that time, and in this respect it differs from the Ray case—presented another circumstance for the consideration of a jury, but did not change that into a matter of law which is essentially a question of fact.   It still remained for a jury to determine whether the plaintiff ought, in the exercise of reasonable prudence, to have looked out for the expected train, in view of the nature of his duties and the importance of attending to the work of removing his own train to the siding, and the dangers to be apprehended.   In the language of Mr. Justice Harlan:

"In determining whether an employee has recklessly

exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed, to all the circumstances of the particular occasion." (*Kane v. Northern Central Railway,* 128 U. S. 91, 95.)

(See, also, *Comstock v. U. P. Rly. Co.,* 56 Kan. 228; *St. Louis, I. M. & S. R. Co. v. Jackson,* [Ark. 1906] 6 L. R. A., n. s., 646; *Shoner v. The Pennsylvania Company,* 130 Ind. 170.)

It should be observed that the plaintiff's work was upon and along the track. This is not the case of an employee coming from some other place of duty away from the track, and walking upon or crossing it without looking. In this respect the case differs from many others where this general subject has been considered.

Decisions have been cited wherein this court has held that employees were chargeable with contributory negligence as a matter of law. These cases have been carefully considered, but are believed to be distinguishable from the one here presented. Where there is no absolute rule imputing negligence as a matter of law, it must be determined upon the circumstances of each case, and may be one of fact or of law, as the circumstances may disclose. The boundary line between cases where, under the evidence, the question of negligence is one of law for the court, and those where it is one of fact for the jury, is not always easily traced, and may be perplexing in this instance; but, following the decisions of this court already cited, we conclude that the district court did not err in holding that the evidence presented a case for a jury.

The plaintiff presents a cross-appeal, based upon the rejection of the testimony offered to show the distance within which the passenger train could have been stopped. This evidence was competent, and the witnesses appear to have been qualified to testify. (*U. P. Rly. Co. v. Shannon,* 33 Kan. 446.) The offer was

probably rejected because of the opinion of the court, entertained at that time, that the plaintiff could not recover because of contributory negligence.

The order for a new trial is affirmed.

Burch, J.: (dissenting) : The case of *Ray v. Railway Co.,* 82 Kan. 704, was decided upon an interpretation of the facts. Although the plaintiff was merely picking up a board, he was in fact doing the last act of clearing the track. Therefore he was placed in the category of those who work on the track, and consequently are relieved from the absolute duty of looking and listening. Still, such persons must keep a lookout consistent with their duties. I am unable to assign the plaintiff to that class. His work did not hold his attention to the narrow field of a place on the track. It was his business to go about among the fixed, movable and moving things of a brakeman's environment, looking out for himself, for others, and for the company's property. He was entitled to no warning that he was about to step off the depot platform and upon the track, or that he was about to encounter some obstruction to his movements. An active vision of wide range was a necessary qualification for the performance of his work, and consequently the Ray case and others of like kind do not apply.

When the plaintiff is taken out of the class governed by the Ray case it is plain that it was incumbent on him to take the momentary glance necessary for his safety before stepping in front of the oncoming passenger train. The passenger train was expected. The plaintiff was assisting in clearing the track for it. Yet, he says:

"I did not see it [the passenger train]. I did not look for it. I did n't look back. I stepped on the track without looking. If I had looked I would have seen the train. Of course if I had seen it I would not have stepped in front of it. If I had not stepped in front of the train I would not have been injured. I could

have seen train 221 as far north as I could see our way car south. The reason I did not see it is because I did not look; I had my face toward our conductor, and my back toward 221."

These admissions show contributory negligence as a matter of law.

Mr. Chief Justice Johnston and Mr. Justice Porter join in this dissent.