STELLA B. MARPLE, *Appellee*, V. THE TOPEKA RAILWAY
COMPANY, *Appellant*.

No. 17,133.

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Contributory Negligence* — *Street Railway Crossing.* A pedestrian upon a sidewalk in a city is not as a matter of law chargeable with negligence in crossing the tracks of a street railway upon which a car is approaching, provided the car is so far away and its apparent speed is such that a person of reasonable prudence would do so in that situation.

2. ———— *Same.* It can not be held as matter of law that it is negligent to pass over a public crossing in a street where cars usually stop, in front of an approaching street car, unless its proximity, its speed as it appears to the pedestrian, the signals, if any, and other circumstances, are such that no other reasonable conclusion can be drawn.

3. ———— *Contributory Negligence—Question of Fact.* It is *held* that upon the evidence the question of contributory negligence was properly submitted to the jury.

Appeal from Shawnee district court. Opinion filed June 10, 1911. Affirmed. Opinion on rehearing, filed November 11, 1911. Reversed.

STATEMENT.

THIS is an action to recover damages for the death of the plaintiff's husband caused by the alleged negligence of the defendant.

Marple was walking east on the north side of Laurent street in Topeka. About the time he reached the curb on the west side of Kansas avenue an electric street car approached the crossing of Laurent street running south on the avenue. Marple continued to walk eastwardly, angling slightly to the north, and passing behind the car, over the west track, proceeded to the west rail of the east track, where he was struck by a north-bound car on that track and thrown a distance of about thirty feet, sustaining injuries causing his

death. The motorman first saw Marple about fifteen feet from the car, which he reversed, but too late to avoid the injury, stopping it at a point 175 to 200 feet beyond the place of collision. The avenue is about forty feet wide at that place from curb to curb, and the railway tracks are equidistant from the curb on either side. The rails in each track are five feet apart, and there is a space of six feet between the east rail of the west track and the west rail of the east track. At the intersection of the west line of the avenue with Laurent street the railway tracks to the southward can ordinarily be seen for one or more blocks, but Marple's view was obstructed by the south-bound car after it passed him. There was nothing to prevent him from seeing the north-bound car for one or more blocks to the south while he was crossing the space between the tracks.

The accident occurred at about 6:30 A. M. The place was one of important business activity and many people appear to have been near by. There was considerable testimony that the bell or gong was not sounded and there was evidence that it was out of order or could not be used. The motorman testified that he could not sound it after seeing the deceased because he had to stand on both feet to manipulate the car. He testified that while his car was farther south his attention was directed to a huckster's wagon near the track, but his failure to see the deceased until close upon him, or within fifteen feet, was not explained. Several witnesses testified that the car was going very fast. The witnesses used the terms "high speed," "extra high speed," "going at a high speed and jumped right into him," "an unusual high rate of speed such as to attract my attention," and "going awful fast." People who were in or about near-by places of business testified that the impact sounded like striking a horse, and one said like striking a wagon. Evidence was given that the car might have been stopped within fifty or sixty feet if

running at twelve miles an hour, which is the limit allowed by a city ordinance. The jury made no special findings of the particular rate of speed. Several persons saw the deceased as he crossed the street and was injured, and testified that he appeared to be looking in front with his head slightly bowed, but no one was in a position to see, nor did any one testify that he did not glance or look to the southward, only that they did not see him look or turn his head in that direction. The motorman testified that he shouted to Marple when he saw him fifteen feet from the car, but that he kept right on taking long strides.

The verdict was for the plaintiff. The defendant appeals.

Leonard S. Ferry, Thomas F. Doran, J. S. Dean, and Charles A. Magaw, for the appellant.

Edwin D. McKeever, for the appellee.

The opinion of the court was delivered by

BENSON, J.: The contention of the defendant is that the plaintiff is barred from a recovery by the contributory negligence of the deceased. This claim was presented in a demurrer to the evidence, in requests for instructions, and otherwise. The argument is that if the deceased looked he must have seen the approaching car in time to have averted injury, and was negligent because he did not stop, and that if he failed to look he was equally negligent. (Young v. Railway Co., 57 Kan. 144, 45 Pac. 583.) If it clearly appears that he was thus negligent the verdict can not be sustained; if it does not so clearly appear, the question was for the jury. The deceased may have seen the car when he stepped over the curb, and before the south-bound car obstructed his view, but whether he did depends upon his vigilance, the distance from him to the car, and on the rate of speed with which it was running. Conceding, however, that he did at that time see, or might have seen it, he

was not absolutely bound to stop there. He might properly go on to a point near the track, in any event, and if there the distance and apparent rate of speed were such that a prudent person might attempt to cross, he would not be chargeable with negligence in doing so. The all-important question relates to his conduct after he had passed in the rear of the south-bound car and reached the space between the tracks. There that car could not interfere with his view, which was then unobstructed, as the jury found. If he then saw the on-coming north-bound car, or in the exercise of ordinary care ought to have seen it, so near and apparently running with such speed as to make the attempt to cross in front of it dangerous in the judgment of a person of ordinary prudence in that situation, then he was negligent, and there should be no recovery for resulting injuries. Seeing the car, however, would not as a matter of law preclude his going on his way, provided it was so far away and its apparent speed was such that a person of reasonable prudence would have proceeded as he did.

"If, in view of his distance from the car, the rate of speed of its approach, and all other circumstances of the event, a reasonably prudent man would accept the hazard and undertake to cross, a traveler may do so, and the propriety of his conduct is ordinarily a question for the jury." (*Railroad Co. v. Gallagher*, 68 Kan. 424, syl. ¶ 2, 75 Pac. 469.)

Inquiry must be made, then, concerning the probable distance of the car from the deceased when he saw or ought to have seen it, at the point where he then was, near to or between the tracks. A witness for the defendant who saw the whole transaction testified that when Marple was at the east rail of the west track the north-bound car was fifty or sixty feet from the crossing where he was killed. If the car was running within the speed limit of twelve miles an hour, and the defendant was proceeding in an ordinary walk of, say, three

Marple v. Railway Co.

miles an hour, then while the car was moving sixty feet he ought to have walked fifteen feet, even without quickening his steps, which would have taken him across the track in safety. That he did not have time to do so indicates what the observation of witnesses, the effect of the impact, and the distance the car ran before it could be stopped, appear to prove, viz., that the car was running at a much higher speed. It must be remembered too that Marple from his point of view could only see the front of the car, and presumably had no adequate means of estimating its speed. It is not unfair to the defendant to say that he had a right, in the absence of evidence to the contrary, to believe that the car was running within the limit of speed allowed by the ordinance. It is true that the witness who testified that the car was fifty or sixty feet away may have been mistaken, and the car may have been at a greater or less distance from the crossing. The whole situation was observed from different points by different people, and it was for the jury to determine whether the car as seen by the deceased appeared to be at such a distance that, considering the speed with which he might rightfully believe it to be running, he should in the exercise of ordinary prudence make the attempt. The court can not declare as matter of law that it is negligent to pass over a public crossing, in a street where cars usually stop, in front of an approaching street car, unless its proximity, its speed as it appears to the pedestrian, the signal, if any, and other circumstances, are such that no other reasonable conclusion can be drawn.

"The mere fact that a traveler can see an approaching car, by which he is afterwards struck, does not in itself establish his contributory negligence. It must not only be approaching, but must be in such close proximity that, taking into account the reasonable rate of speed for such places and present conditions, or apparent rate of speed at which the car is traveling, a reasonably prudent man would not attempt to cross.

. . . The care that is required of the pedestrian at a particular crossing can only be properly measured by taking into consideration the care he has a right to expect will be exercised by those managing a street car along the street he is about to cross. Whether he has a right to expect that the cars will be going at a slow rate of speed, that they will be under control, that they will give the proper signals of alarm to warn him of their approach—all should be considered in determining what is reasonably required of him in making such crossing." (*Saylor v. Union Traction Co.*, 40 Ind. App. 381, 387, 388, 81 N. E. 94.)

The duty of a pedestrian crossing street-car tracks has been stated thus:

"Prudence doubtless requires one about to cross a railroad track to use his eyes to observe any approaching car within his vision. But, as has been shown, prudence does not require one crossing the track of a street railway to extend his observation to the whole line of track within his vision, but only to such distance as, assuming the required care in their management, approaching cars would imperil his crossing." (*Newark Passenger Ry. Co. v. Block*, 55 N. J. Law, 605, 614, 27 Atl. 1067.)

There is nothing in the finding of the jury nor in the evidence, as we understand it, which clearly determines that Marple did not in fact observe this duty. What the distance was to the car when, as we may presume, he saw it is left in doubt by the evidence. The rate of speed, although high, was not precisely determined. In this connection it may be useful to refer to a finding of the jury, as follows:

"Ques. Had the deceased given attention while crossing Kansas avenue, and looked for the car coming from the south, could he not have seen it in time to have stopped and avoided the injury? Ans. If the speed of the car had complied with the ordinance governing speed, he could."

It is only where contributory negligence is conclusively shown beyond cavil or dispute, leaving no room for differences of opinion, that it is held as a matter of

law to bar a recovery.  (*Beaver v. A. T. & S. F. Rld. Co.*, 56 Kan. 514, 43 Pac. 1136.)  If that question is left in doubt it must be submitted to a jury.  (*Westine v. Railway Co.*, 84 Kan. 213, 114 Pac. 219.)

The judgment is affirmed.

## OPINION ON REHEARING.

### HEADNOTE BY THE REPORTER.

1. INSTRUCTIONS—*Comparative Negligence.* The doctrine of comparative negligence does not obtain in the courts of this state. (*Railroad Co. v. Henry*, 57 Kan. 154, 45 Pac. 576.)

2. ——— *Concurrent Negligence—Erroneous Instructions.* Instructions relating to the concurrent negligence of the deceased and the railroad company examined and held to be erroneous.  The rule stated in *Dyerson v. Railroad Co.*, 74 Kan. 528, 87 Pac. 680, is followed and applied.

*Per Curiam:* At the first hearing the argument related principally to the sufficiency of the evidence to support the findings and verdict.  The specifications of errors did not assign error in the instructions.  But error was specified in the order overruling a motion for a new trial and the brief called the attention of the court to the instructions excepted to.  These exceptions were, however, overlooked in the opinion, and will therefore be considered now.

The instructions complained of relate to the doctrine of the last clear chance.  One of them reads:

"If in attempting to make the crossing at which the injury is claimed to have been received the deceased was not in the exercise of ordinary care, then plaintiff would not be entitled to recover unless you believe from the evidence that the motorman could have avoided the accident by the use of ordinary care after he saw, or by the use of ordinary care might have seen, that the deceased was upon the track or was about to cross the track and was in danger of being struck by the car."

This instruction is not in harmony with the opinion of this court in *Dyerson v. Railroad Co.*, 74 Kan. 528,

45—85 KAN.

87 Pac. 680. The rule upon this subject is stated in the fourth paragraph of the syllabus, and need not be repeated here. In the opinion it was said:

"There seems, however, to be no sufficient reason why the mere fact that a defendant is negligent in failing to discover a plaintiff's negligence, or his danger, should in and of itself exclude all consideration of contributory negligence. Take the not unusual situation of a train being negligently operated, let us say by being run at too high a speed and without proper signals of warning being given. Now, any one injured as a result of such negligence has *prima facie* a right to recover. But, if his own negligence has contributed to his injury, then ordinarily his right is barred. How is the situation altered if the railroad employees add to their negligence in regard to speed and signals the negligence of failing to keep a sufficient lookout? The negligence is of the same sort; and, if the contributory negligence of the person injured prevents a recovery when but the two elements of negligence are present, consistency requires that it should have the same effect although a third element is added." (p. 535.)

By the instruction given, and in two others, the jury were informed that the plaintiff might recover if the motorman by the use of ordinary care might have seen him in an exposed position of danger in time to have avoided the accident, although they should also find that the deceased was also negligent in going upon the track. This was contrary to the rule in the Dyerson case and other decisions of this court. In *Railway Co. v. Bentley*, 78 Kan. 221, 93 Pac. 150, an instruction was held to be erroneous which stated that:

"If the employees in charge of the engine could by the exercise of reasonable diligence have seen the deceased on the track in sufficient time to stop the engine, and thus avoid the injury, plaintiff would be entitled to recover notwithstanding the deceased was negligent in failing to discover the approach of the engine." (p. 226.)

The Dyerson and Bentley cases were followed in *Himmelwright v. Baker*, 82 Kan. 569, 109 Pac. 178.

It is true, as stated in the opinion in the Dyerson

case (74 Kan. 528, 534), that a different principle
would apply if the motorman actually saw the deceased
in an exposed position of danger in time to have
averted the injury, for in that case the element of reck-
lessness or wantonness analogous to a willful and in-
tentional wrong would have allowed the application of
a different rule.

In the argument upon the rehearing the alleged in-
sufficiency of the findings and evidence was again dis-
cussed, and it is insisted by the defendant that the
opinion is based upon a misapprehension of the facts
as presented in the evidence. This may not be very im-
portant in view of the conclusion now reached, but it is
believed that the record warranted the views expressed
in the opinion.

Because of error in the instructions referred to the
judgment is reversed and the cause remanded for a new
trial.